Charles R. BARNES *v.*
GREENHEAD FARMING COMPANY, INC.,
and AIG Claims Services

CA 07-729                                270 S.W.3d 873

Court of Appeals of Arkansas
Opinion delivered January 9, 2008

[Rehearing denied February 13, 2008.]

*James A. McLarty, III*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellees.

Larry D. Vaught, Judge. Appellant Charles Barnes appeals from the Arkansas Workers' Compensation Commission's decision finding that he did not suffer compensable back and right hip, leg, and foot injuries. Specifically, he argues that there is a lack of substantial evidence supporting the Commission's decision. We agree and reverse.

Barnes, now forty-seven years old, worked as an excavator operator for appellee Greenhead Farming Company for eighteen years. On May 11, 2005, Barnes was sitting on an excavator that began to slide off its trailer. Afraid the excavator would turn over with him in it, Barnes jumped through the windshield out of the excavator and fell six feet to the ground. Barnes was taken to the emergency room where he was treated by Dr. Dewakar Pulisetty, who diagnosed Barnes with a fractured left ankle. Dr. Pulisetty ordered Barnes to walk with crutches for twelve weeks.

Approximately four weeks after his injury, and still on crutches, Barnes returned to part-time work Greenhead Farms. On December 12, 2005, Barnes was released to return to work at full duty and did so, however, he testified that he was unable to perform his job as well as he did prior to his injury because of his right-side complaints. Later, Barnes was issued a 21% impairment rating to his left lower extremity.

In February 2006 and still experiencing pain in his right hip, leg, and foot, Barnes sought and paid for medical treatment from Dr. Nicole Lawson. Dr. Lawson recommended an MRI, and it showed right disk protrusions at the L5–S1 with possible impingement upon the right S1 nerve root; a diffuse disk bulge at L5–S1 impinging on the exiting bilateral L5 nerve root; and a slight extraforminal broad based disk protrusion at L2–3 with possible impingement at the right L2 nerve root.

The administrative law judge found that Barnes met his burden of establishing that he sustained compensable back and right hip, leg, and foot injuries on May 11, 2005. The ALJ also found that medical benefits in connection with the treatment of these injuries were reasonable and necessary and the responsibility of Greenhead Farms. On appeal, the Commission reversed, finding that Barnes did not prove that he sustained a compensable injuries to his low back, right hip, leg, and foot on May 11, 2005, and that Barnes was not entitled to medical benefits for those injuries.

The only question for this court to review is whether the decision of the Commission, denying benefits to Barnes, is supported by substantial evidence. We find that it was not and reverse.

We review decisions of the Commission to see if they are supported by substantial evidence. *Jordan v. J.C. Penney Co.*, 57 Ark. App. 174, 944 S.W.2d 547 (1997). Substantial evidence is relevant evidence, which a reasonable mind might accept as adequate to support a conclusion. *Jordan*, 57 Ark App. at 176, 944 S.W.2d at 549. The issue is not whether we might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. *Id.* If reasonable minds could reach the result shown by the Commission's decision, we must affirm. *Id.*

The record is limited to the testimony of Barnes, Shelley Evins (Barnes's supervisor and the general manager of Greenhead Farms since 1990), and the medical evidence. Based on this

evidence, the Commission stated, "we find that it would require conjecture and sheer speculation to causally link the claimant's alleged back, right hip, leg problems to his work incident of May 11, 2005 . . . ." The Commission then set forth findings in support of this conclusion. For example, the Commission found that "[t]he instant claimant has an extensive prior history of chronic back problems preceding his May 11, 2005 injury, as the claimant has admitted to being involved in several motor vehicle and four-wheeler accidents, and the medical records demonstrate the same." A careful review of the record demonstrates that this finding is not supported by the evidence.

Barnes recalled that in May 1994 that he experienced low back pain while riding a four-wheeler — but there was no fall or accident. Barnes was diagnosed with an "acute lumbar sprain, recurrent" and received no follow-up medical treatment. Barnes also recalled that in September 2002 he was involved in a one-vehicle accident where he ran off the road and struck a tree. The medical record that corresponds with this accident reflects that Barnes complained of stiffness in his right shoulder, chest, and right leg. He made no low back complaints, and according to the record, Barnes had no other medical treatment following this incident. Barnes did not recall flipping over backward on a four-wheeler in November 1992, but the medical record reflects that he presented at the emergency room with complaints of abdominal and neck pain. Again, there were no complaints of back pain.

Therefore, what the medical evidence actually shows is that, prior to May 2005, Barnes complained of back pain one time in May 1994 (eleven years prior), that he had no diagnosis other than an acute lumbar sprain, and that he had no follow-up medical treatment. This does not support the Commission's finding that Barnes had "an extensive prior history of chronic back problems."

Not only does the medical evidence wholly fail to demonstrate "an extensive prior history of chronic back problems," Barnes's testimony at the hearing was that he did not suffer from back or right leg problems prior to the May 2005 incident. Moreover, Barnes's testimony was corroborated by his supervisor who also testified that he was unaware of any prior back problems suffered by Barnes. Evins testified that Barnes often worked seventy-plus hour weeks as a heavy machine operator and that he would not be able to do that type of work with chronic back

problems. In contrast, Evins testified that after the May 2005 incident, Barnes has not been able to fully perform his job.

Another finding made by the Commission was that Barnes's testimony, that he reported low back and right-side complaints within a week of his fall, was incredible and not supported by the medical evidence.[1] The Commission further found that there was no "documented report" of Barnes's back complaints until six months after the work incident. Again, a review of the record demonstrates that these findings are also unsupported.

Barnes's testimony was that, within a week of his fall and thereafter, he reported to two representatives of the workers' compensation carrier that he was having right hip, leg, and foot pain. Barnes also testified that more than once he requested medical treatment for these right-side complaints from both of these representatives, but he was told by them that the pain was from putting too much weight on the right side and that the pain would go away once he got off the crutches. Neither of the representatives from the carrier scheduled any medical appointments for him in response to his complaints. Barnes further testified that he reported his right-side complaints to the carrier-selected physicians as well but that these doctors would not treat him. He testified he specifically requested that Drs. Charles Varela and Stephen Eichert, both selected by the workers' compensation carrier, to examine him for his right-side complaints, but both refused without explanation.

After twelve weeks, and no longer using the crutches, Barnes continued to have pain in his right hip, leg, and foot. He again contacted the representative of the workers' compensation carrier to report his continued pain despite the fact he was off the crutches. He again requested medical treatment. The representative of the carrier advised she would have to "talk to them." Ultimately, the adjuster told Barnes that he could not see a doctor because "it had been too long."

Noticeably absent at the hearing was testimony from the representatives of Greenhead Farms' workers' compensation car-

---

[1] While the Commission found Barnes's testimony incredible, we note that Evins, Barnes's long-time supervisor, specifically testified that Barnes is one of Evins's most trusted employees. Evins further testified that he trusts Barnes to carry signed corporate checks for days. We also note that the ALJ, who presided over the hearing, also found that Barnes was a credible witness.

rier. If Barnes had been untruthful about lodging multiple reports of right-side complaints, both of the representatives from the carrier could have testified and controverted Barnes's testimony. They did not. The absence of testimony from these witnesses, who were within the control of Greenhead Farms, raises the presumption that their testimony would have been unfavorable to Greenhead Farms. *See Rutherford v. Casey*, 190 Ark. 79, 77 S.W.2d 58 (1934); *National Life Ins. Co. v. Brennecke*, 195 Ark. 1088, 115 S.W.2d 855 (1938); *Canal Ins. Co. v. Hall*, 259 Ark. 797, 536 S.W.2d 702 (1976); *APCO Oil Co. v. Stephens*, 270 Ark. 715, 606 S.W.2d 134 (1980).

Not only did Barnes's testimony go uncontroverted by Greenhead Farms, but it was corroborated by Evins, who testified that after the accident, Barnes reported his right-side complaints. Evins observed that Barnes was unable to fully perform his job like he had prior to the accident. Some of the most critical testimony offered by Evins was that he contacted the adjuster for the workers' compensation carrier directly because he had concerns about the quality of Barnes's medical care. Evins did not think that Barnes was ready to return to part-time work when the carrier wanted him to. Evins said that while he did not have part-time work available, he found work for Barnes to do at the carrier's insistence. Evins also urged the carrier to have Barnes's right leg and foot examined by a physician. Because the carrier never provided medical treatment for those complaints, Evins testified that "I just didn't think that they were providing the medical benefits they should."

It is true that complaints to Barnes's right side or back did not appear in the medical records until November 2005. However, we note that each of the doctors seen by Barnes up until that time were selected by Greenhead Farm's carrier. We also note that even when the physicians selected by the carrier, Drs. Eichert and Varela, did finally document Barnes's right-side complaints, their reports reflect that they only treated Barnes for his left foot fracture and still did not offer any treatment for Barnes's right-side complaints.

Soon after Dr. Varela released Barnes from treatment, in December 2005, Barnes wasted no time seeking treatment from Dr. Nicole Lawson. Interestingly, Dr. Lawson, the first physician not selected and paid by Greenhead Farms' workers' compensation carrier, noted Barnes's right-side complaints in her report and

ordered an MRI, which demonstrated objective findings consistent with Barnes's continued complaints.

■ In sum, based on the medical evidence, the testimony elicited at the hearing, the absence of testimony from Greenhead Farms controverting same, and the Commission's unsupported findings of fact, we hold that fair-minded persons could not reach the conclusion of the Commission to deny benefits for Barnes's low back and right hip, leg, and foot injuries. Accordingly, we reverse and remand the Commission's for an award of benefits consistent with this opinion.

Reversed and remanded.

MARSHALL and MILLER, JJ., agree.