GARRISON, Judge.
This is an appeal by plaintiff from the trial court’s judgment in a worker’s compensation suit.
Plaintiff Armand Duvio was employed by Building Engineering Services Co. Inc. (BESCO) as a plumber when he fell from a ladder on May 26, 1976, while working on the plumbing system at the Louisiana Su-perdome. His employer’s worker’s compensation insurer, Continental Casualty Co. (CCC) paid him benefits of $85.00 per week from the time of the accident until March 9, 1980, when CCC, based on a surveillance report, concluded that Duvio was again working as a plumber. CCC terminated benefits and Duvio instituted suit, alleging that the discontinuation of benefits was without cause.
The trial court found that as a result of the accident, Duvio was permanently partially disabled under La.R.S. 23:1221 and therefore entitled to two-thirds of the difference between his wages at the time of the injury and any lesser wages he might earn, not to exceed $85.00 per week, with credit for the benefits paid through March 9, 1980. The court also found that Duvio failed to show that he has earned lesser wages since March 9, 1980, and that he is thus not entitled to any benefits since that time. The court additionally held that Du-vio was entitled to $350.00 attorney’s fees based on CCC’s arbitrary and capricious failure to pay plaintiff $25.00 for a doctor’s office visit in August 1980.
Plaintiff has appealed the trial court’s judgment, contending that the trial court erred in the following respects: (1) concluding from the evidence that plaintiff was partially, rather than totally disabled; (2) failing to award plaintiff benefits for treatment of his cervical disc disease; and (3) awarding only $350.00 as attorney fees.
The facts surrounding appellant’s accident and subsequent medical condition are. as follows. On May 26,1976, appellant had been employed by BESCO as a maintenance plumber for eleven months. His duties included general maintenance of drains, air conditioner condensate lines and sewer lines, as well as repair of water leaks, hand washers, toilets and water fountains.
At the time of the accident, appellant was standing upon a six-foot ladder changing a drain line. He was pushing on a large wrench in an attempt to loosen a piece of pipe, when he apparently lost his balance and fell. Plaintiff landed on his buttocks, back and elbow. He was immediately taken to the emergency room of Hotel Dieu hospital where he was hospitalized for an acute cervical sprain, pain in his neck, limited motion radiating into his arm, and pain and swelling from a contusion of *438 his right elbow. His treating physician, Dr. Walter Brent, an orthopedic surgeon, prescribed rest and medication.
In the months that followed, Mr. Duvio developed dizziness and partial hearing loss in one ear, the result of a vestibular contusion which his doctors associated with the May accident. He was hospitalized for testing and, when tests proved normal, he was placed on medication to suppress imbalances in his inner ear and lessen dizziness. By mid-October 1976, appellant’s dizziness had receded and he was back at his job. His neurologist, Dr. Trahant, felt at that time that Mr. Duvio could return to full duties.
Appellant’s cervical condition, however, deteriorated to the point that he required surgery in February 1977 for a herniated C5-6 cervical disc. This surgery was performed by Dr. Joseph Nadell, a neurosurgeon, who did not testify at trial.
Further, appellant continued to experience pain and limited motion in his elbow such that surgery was performed in March 1978 for what Dr. Brent in his deposition termed chronic radiohumeral bursitis. Dr. Brent noted that by July 1978, appellant had only minimal limitation of motion in his elbow, and that he did not see Mr. Duvio again until an April 1980 re-evaluation, when he had complaints of continuing elbow pain. He further stated that as of August 1980 he was of the opinion that Mr. Duvio had a partial permanent disability of 15-20%, and therefore could not engage in activities that required heavy manual labor.
Based on the evidence, we find that the trial court’s finding of partial disability was correct. Permanent total disability is defined by La.R.S. 23:1221(2) as “total disability of an employee to engage in any gainful occupation for wages, whether or not of the same or a similar occupation as that in which the employee was customarily engaged when injured...” Permanent partial disability is the disability of the employee to perform “the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience ...”
The only expert opinion introduced with respect to the measure of appellant’s disability was in the form of Dr. Brent’s deposition, in which he asserted that Mr. Duvio could not engage in activities which required heavy lifting, but that he could perform lighter work. It is clear that the injury to appellant's elbow leaves him with a partial rather than total disability.
This is especially true in light of the fact that between 1979 and 1982 Mr. Duvio was engaged in a plumbing contracting business, Armand Plumbing, which he took over from his father and where he acted primarily in a supervisory capacity. Accordingly, we conclude that the trial court was not manifestly erroneous on this issue.
Turning to the question of wages earned, we note that plaintiff testified as to the gross amount of various contracts awarded to him. As pointed out by plaintiff, the gross amount of the contract does not necessarily equal his profit or income therefrom, as it fails to take into account his costs of materials, labor, overhead, etc. Plaintiff attempted to prove his costs by testifying from a list that he had prepared after reviewing Sewerage & Water Board records. He did not, however, produce the records. When the trial judge prevented plaintiff from testifying from the list on the grounds that it was a self-serving document and hearsay, plaintiff failed to proffer the document. As plaintiff failed to proffer, he cannot now be heard to complain on appeal. Greene v. Wright, 365 So.2d 551 (La.App. 1st, 1978); Carroll v. Guillot, 337 So.2d 310 (La.App. 3rd, 1976); Nettles v. Evans, 303 So.2d 306 (La.App. 1st, 1974).
We further note that plaintiff could have introduced other evidence, such as his own business records, payroll checks, income tax returns, but failed to do so.
Turning to the question of unpaid medical bills and penalties to attorney’s fees, we note the trial court ordered CCC to pay Mr. Duvio’s medical bill of $25.00 for an office *439 visit to Dr. Brent and awarded attorney’s fees to plaintiff on the grounds that the insurer’s refusal to pay was arbitrary and capricious.
Plaintiff argues that the trial court erred in failing to order the insurer to pay another outstanding bill in the amount of $235.00. Plaintiff had never submitted this bill to the insurer for payment. For the trial court to have awarded payment prior to presentment for payment would clearly have been premature. We find that the trial court is correct in its ruling on this matter.
The insurer had received the $25.00 bill awarded and provided no reason for refusal of payment. Accordingly, the trial judge was correct in his factual determination that the insurer acted in an arbitrary and capricious manner such that attorney’s fees were due.
Turning to the amount of attorney’s fees awarded, we find that the amount awarded is not a clear abuse of discretion. Lastly, we note, as did the trial judge, that plaintiff is entitled to re-open this matter pursuant to R.S. 23:1331.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.