Larry D. ROBERTS *v.* WHIRLPOOL

CA 07-1032                                                                284 S.W.3d 100

Court of Appeals of Arkansas
Opinion delivered May 14, 2008

*Walker, Shock & Harp, PLLC*, by: *Eddie H. Walker*, for appellant.

*Conner & Winters, LLP*, by: *Robert L. Jones, III*, and *Amber J. Prince*, for appellees.

SARAH J. HEFFLEY, Judge. Larry Roberts appeals the decision of the Arkansas Workers' Compensation Commission finding that his cervical injury was not causally connected to his work-related accident. By this two-to-one decision, the Commission reversed the opinion of the administrative law judge, who had found the claim compensable. Appellant contends on appeal that substantial evidence does not support the Commission's decision. We reverse and remand for proceedings consistent with this opinion.

Appellant began working for Whirpool in 1970. On September 10, 2004, when he was fifty-four years old, appellant was moving 1,900 pounds of batteries in a cart, and one of the cart's wheels became stuck in a hole. As he was pulling and jerking on the cart to dislodge it from the hole, appellant felt pain in his left shoulder that shot down his arm. He did not report the incident immediately because it was a Friday and there were only ten minutes left on his shift. However, the pain in his shoulder and arm worsened and spread into his hand, so he went to the emergency room later that evening.

At the emergency room, appellant reported that he had injured himself at work while moving batteries, and he complained of pain to his left shoulder blade that radiated down his arm, and numbness and tingling in the fingers of his left hand. He was given pain medication and muscle relaxers with the recommendation that he have a CT or MRI to rule out the presence of a herniated disc with radiculopathy. Appellant reported the injury to appellee the following Monday, and he was sent to the company

doctor, Dr. Thomas Cheyne, still complaining of left shoulder pain and numbness in his left hand. Dr. Cheyne ordered an open-air MRI of the cervical spine as an evaluation for cervical radiculopathy. The MRI was done on September 16, 2004, which showed cervical spinal spondylosis with canal stenosis most pronounced at the C7-T1 level and bilateral degenerative facet joint disease with neuroforaminal narrowing. Small focal disc protrusions were suspected at multiple levels, and the radiologist suggested a spinal myelogram to assess the canal stenosis and to differentiate between disc protrusions and osteophytes. Appellant returned to Dr. Cheyne on September 22, and while Dr. Cheyne placed appellant on a ten-pound weight restriction with no reaching, pulling, pushing or lifting above shoulder level, he ordered no further testing as had been recommended by the radiologist.

Appellant testified that the problems with numbness and tingling in his hands never resolved, and he later developed problems with his back. He had been working with the aid of a helper, but the helper was taken away in December 2004. On his own, appellant made an appointment with his personal physician, Dr. Jeffrey Medlock, on January 26, 2005. While his chief complaint related to his back, appellant also reported pain that radiated down his left arm with numbness and tingling in his left hand. On physical examination, Dr. Medlock noted that there was atrophy in the hypothenar space on the left hand. An MRI of the lumbar spine was taken on that date, but it detected in the cervical area at the C7-T1 level canal stenosis, anterolisthesis, facet hytrophy, ligamentum flavum hypertrophy, and canal narrowing, as well as spondylosis. Hydromelia was also suspected and further imaging of the cervical spine was recommended. At this visit, appellant attributed his problems to the accident at work on September 10, 2004.[1]

Appellant returned to Dr. Medlock on February 7, 2005, and again complained of numbness in his fingers on the left hand and diminished strength and dexterity. Dr. Medlock made an assessment of radiculopathy in the left upper extremity. In early March, appellant was referred to Dr. Arthur Johnson, a neurosurgeon, for an evaluation related to his back condition. In an office note, Dr. Johnson noted that appellant's lumbar and cervical spine problems were unrelated or "two separate issues." Dr. Johnson

---

[1] Appellant's back problems were considered only degenerative in origin, and he withdrew his claim that his back condition was related to the accident at work.

took appellant off work for three months because of his back and sent him for a course of physical therapy. At the first therapy session, appellant complained of neck pain and the lack of control of his left hand, and he mentioned that the muscles in that hand had wasted away and that he was unable to button his clothing or use his left arm.

On May 13, 2005, appellant was sent to the emergency room by Dr. Medlock because of complaints of pain in his neck and left arm, which appellant related to the September 2004 work-related accident. Appellant's physical examination revealed wasting to his left hand with diminished grip strength. The MRI taken of his cervical spine was described as "grossly abnormal." It revealed a facet subluxation secondary to degenerative disc disease at the C7-T1 area with a large disc herniation, resulting in spinal cord compression with evidence of cord edema. When the study was read, appellant had already been sent home, but he was contacted and told to return to the hospital for admittance. There, he again came under the care of Dr. Arthur Johnson.

On May 17, Dr. Johnson performed an anterior cervical discetomy and fusion at C6-T1 and C7-T1. After the surgery, appellant participated in rehabilitation where it was noted that the grip strength in his left hand was improving.

On December 28, 2005, Dr. Johnson authored a letter to appellant's attorney. He wrote:

> I have reviewed the patient's emergency room report dated 09/10/04 and the patient did present with pain in the left shoulder and left arm and also pain going to the fingers as well. The occupational report prepared on 09/11/04 also confirmed the same history with pain in the left arm and numbness. These findings in the left arm are problems that can definitely be linked to cervical disc herniation, as the patient's pain appears to be radiating from the shoulder all the way down into the arms and fingers. If this was an isolated shoulder problem, usually the pain would be more isolated to the shoulders and would not have any radiation into a radicular pattern in the extremity. It is therefore my opinion that the patient's problems are related to the accident and that the cervical disc problems that occurred were a result. Also, the history of the battery charger dropping into a hole in the concrete floor and being difficult to get out and the patient could not remove this is an acceptable mechanism of injury as well.

Dr. Johnson was also deposed on June 29, 2006. In his deposition, he reiterated his position that the cervical disc herniation, which produced spinal cord damage, was causally related to appellant's accident at work. He noted that the MRI of September 2004 revealed the herniation and that from the outset, as shown by the emergency room records, appellant presented with pain flowing down his left arm and into his hand with associated numbness and tingling. He stated that these symptoms showed a radicular pattern consistent with nerve-root compression resulting from the herniation. Dr. Johnson also compared the September 2004 and May 2005 MRIs. The latter one showed that the herniation had become more prominent and also revealed the presence of edema, which he said was indicative of spinal cord injury. Dr. Johnson explained that edema can occur with the initial injury or progressively over time as the herniation causes more irritation and damage to the cord. Dr. Johnson also explained that atrophy, or the muscle wasting in appellant's left hand, was a by-product of the edema, which causes the loss of innervation to the anterior horn cells of the spinal cord, which then causes the nerve fibers and eventually the muscle fibers to die.

Appellee retained the services of Dr. Johnny K. Smelz, a physiatrist. Dr. Smelz did not see appellant, but she reviewed his medical records and offered written "comments" and a "commentary" on the testimony of Dr. Johnson. Dr. Smelz was of the opinion that the injury appellant sustained in the accident was compatible with myofascial muscle pain, and not radicular pain stemming from a herniation. Further, she opined that appellant's more recent difficulties resulted from his pre-existing degenerative disc disease that had merely worsened over time. She also questioned the opinion of Dr. Johnson, who had performed the surgery, that appellant had a spinal cord injury, because she said there was no objective evidence to support that conclusion.

In finding that appellant's cervical injury was not related to the accident at work, the Commission dismissed entirely the opinion of Dr. Johnson because it was "based on the claimant's history" and because "he did not review the claimant's medical records." The Commission then relied on the comments of Dr. Smelz and denied appellant's claim because "he was not diagnosed with a herniated disc in his cervical spine until 8 months after his injury"; because appellant "never complained of neck pain"; and because appellant had "significant degenerative changes in his spine."

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Liaromatis v. Baxter County Regional Hospital,* 95 Ark. App. 296, 236 S.W.3d 524 (2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Wal-Mart Stores, Inc.,* 100 Ark. App. 17, 262 S.W.3d 630 (2007). When the Commission denies benefits upon a finding that the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Cooper v. Hiland Dairy,* 69 Ark. App. 200, 11 S.W.3d 5 (2000).

■ Appellant contends that the Commission's decision is not supported by substantial evidence because its reasons for rejecting Dr. Johnson's opinion were specious. We agree.

The first reason the Commission gave for discounting Dr. Johnson's opinion was because he relied on the history relayed to him by the appellant. The history appellant gave was that he was asymptomatic before the accident and that afterwards he experienced pain, and numbness and tingling in his left arm and hand that did not resolve with time. We can conceive of circumstances in which the Commission might fairly reject a doctor's opinion that is based on the history provided by a claimant, such as when the Commission finds that the claimant's account is not worthy of belief. Where, as here, however, there is no evidence in the record suggesting that the history was inaccurate, and the Commission makes no finding that the history given is not credible, there is no just basis for dismissing a doctor's opinion simply because it was based in part on the history provided by the claimant. It is within the province of the Commission to weigh conflicting medical evidence; however, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Fayetteville School District v. Kunzelman,* 93 Ark. App. 160, 217 S.W.3d 149 (2005). We hold that the Commission's rationale for rejecting Dr. Johnson's opinion is fundamentally flawed.

The second ground upon which the Commission discredited Dr. Johnson's opinion was that he had not reviewed appellant's medical records. This finding is not supported by substantial evidence. On March 8, 2005, which was the appellant's first appointment with him, Dr. Johnson made a notation that he did

not have access to appellant's medical records. However, Dr. Johnson's deposition testimony reveals that he was by that time fully conversant with appellant's medical records.

This court does not review decisions of the Commission de novo on the record. *S&S Construction, Inc. v. Coplin,* 65 Ark. App. 251, 986 S.W.2d 132 (1999). The Commission's erroneous findings require us to reverse its decision and remand for it to fully examine the relevant evidence presented. *Tucker v. Roberts-McNutt, Inc.,* 342 Ark. 511, 29 S.W.3d 706 (2000); *Vaughan v. APS Services, LLC,* 99 Ark. App. 267, 259 S.W.3d 470 (2007).

Reversed and remanded.

GRIFFEN and GLOVER, JJ., agree.