2009 Ark. App. 249

**Darrell W. DIGGS, Appellant,**

v.

**CATTLEMEN'S LIVESTOCK MARKET, INC., and Commerce & Industry Insurance Co., Appellees.**

**No. CA 08–717.**

Court of Appeals of Arkansas.

April 8, 2009.

Lane, Muse, Arman & Pullen, by: Shannon Muse Carroll, Hot Springs, for appellant.

Worley, Wood & Parrish, P.A., by: Jarrod S. Parrish, Little Rock, for appellees.

M. MICHAEL KINARD, Judge.

Darrell Diggs appeals the decision of the Arkansas Workers' Compensation Commission finding that he was not entitled to additional medical treatment or additional temporary total disability (TTD) benefits. By this two-to-one decision, the Commission reversed the opinion of the administrative law judge (ALJ), who had found that Diggs was entitled to back surgery and additional TTD compensation. Appellant contends that the Commission erred by arbitrarily disregarding the medical opinions of two doctors. We agree and reverse and remand for proceedings consistent with this opinion.

Appellant sustained an admittedly compensable injury to his back on January 20, 2005, while taking the front-end loader off of a tractor. Appellant first received treatment at the Mercy Medical Clinic in Glenwood, Arkansas, on January 21, 2005. Treatment notes on that date reflect that appellant was suffering from lower back pain radiating to his left hip and groin. An MRI of the lumbar spine taken February 16, 2005, showed "[m]oderate size broad-based central subligamentous herniation of L4–5 with small central subligamentous herniation of L5–S1 and some degenerative disk changes at both levels. Mild central bulging of T12–L1 is incidentally seen." Based on these MRI results,

appellant was referred to Dr. John Pace, a neurosurgeon.

Dr. Pace first saw appellant on March 8, 2005, and he took appellant off work. Appellant has not worked since that date. Dr. Pace diagnosed appellant with lumbar radiculopathy at L5 and a disc herniation. His examination of appellant revealed a positive straight leg test on the left, decreased sensations in his left leg as shown by soft touch and pin prick tests, and diminished left Achilles strength. While under Dr. Pace's care, appellant was prescribed medication, underwent physical therapy, and had one epidural steroid injection. While the injection did not significantly relieve appellant's pain, Dr. Pace wanted to do a second, but did not because it was not approved. Appellant testified that his pain continued and in fact became worse. A nerve conduction study performed by Dr. Darin Wilbourn on April 25, 2005, showed "[e]lectrodiagnostic evidence of left L5 radiculopathy."

Dr. Scott Carle examined appellant on April 21, 2005. Dr. Carle found appellant's neurological examination to be normal. After reviewing appellant's medical records, he diagnosed appellant's left leg pain as being from either a non-compressive radiculopathy or sacroiliac joint syndrome. Regarding appellant's maximum medical improvement, Dr. Carle noted "his technical MMI date should be reached at a point in time, when reasonable medical care has been administered for the above diagnosis, not to exceed twelve weeks from the date of this report. If found to have electrodiagnostic evidence of radiculopathy, this period may warrant extension if surgical intervention takes place." Overall, Dr. Carle found appellant's prognosis to be "unknown" pending "further diagnostics."

Dr. Carle referred appellant to Dr. William Ackerman, a pain management specialist. Dr. Ackerman first saw appellant on April 28, 2005, at which time he noted that appellant's symptoms over the past seven to nine days had become progressively worse with respect to the radiation of pain to the bottom of his foot. Dr. Ackerman wrote, "He is suffering today." Dr. Ackerman treated appellant with a lumbar epidural steroid injection on May 5, 2005, and noted that appellant was to have a follow-up visit in two weeks. The record reflects that appellant did not go to his appointments with Dr. Ackerman on June 9 or June 23, 2005, which caused Dr. Ackerman to note: "He has been noncompliant with respect to his treatment and is returned back to work with full duty. Today's injection was to help ascertain an impairment rating. I do not feel that he qualifies for an impairment to the body as a whole." Appellant testified that the injection Dr. Ackerman gave him burned for several days and did not relieve his pain. At Dr. Ackerman's recommendation, appellant underwent a functional capacity evaluation, which produced unreliable results because appellant would not perform lifting or bending tasks due to his understanding from Dr. Pace that doing such tasks could cause further injury.

Dr. Steven Cathey, a neurologist, first examined appellant on May 12, 2005. He found no sign of lumbar radiculopathy. Dr. Cathey interpreted appellant's MRI as showing "evidence of a broad-based, midline disc protrusion at L4–L5," without "any resulting canal stenosis or nerve root impingement." Dr. Cathey diagnosed appellant with a musculoskeletal injury superimposed on preexisting degenerative changes in his lower back. Dr. Cathey did not believe that appellant would benefit from neurosurgical intervention. Nonetheless, he referred appellant back to Dr. Pace, but appellees did not authorize further treatment. Appellant himself paid for

an appointment with Dr. Pace on December 13, 2005. Dr. Pace testified in his deposition that on that date he noted decreased muscle mass and decreased sensation in appellant's left lower extremity. He wanted to order a myelogram, a post-myelogram CT, and a discogram, but appellant was unable to pay for those procedures.

The administrative law judge appointed Dr. Reza Shahim to perform an independent medical evaluation pursuant to Ark. Code Ann. § 11–9–511 (Repl.2002). Dr. Shahim ordered a repeat MRI, a myelogram, and a post-myelogram CT. Dr. Shahim recommended surgical decompression with diskectomies for treatment of his radiculopathy as the best initial option and noted that appellant might ultimately require a fusion.

Appellees paid temporary total disability compensation to appellant through June 29, 2005, and made three additional temporary total disability compensation payments in February and March 2007. When appellees terminated appellant's temporary total disability payments in June 2005, a doctor assigned, and appellees paid out, a five-percent impairment rating. The issues before the ALJ were whether Diggs was entitled to additional medical treatment (including but not limited to decompression surgery proposed by Dr. Shahim); additional TTD benefits from June 29, 2005, to a date yet to be determined; and attorney's fees. The ALJ awarded appellant both additional medical treatment and additional TTD, and the Commission reversed. This appeal followed.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* This court will not reverse the Commission's decision unless it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health,* 343 Ark. 255, 33 S.W.3d 151 (2000). The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). However, our supreme court has stated that while the Commission may be insulated to a certain degree, it is not so insulated to render appellate review meaningless. *Kimbell, supra.* Furthermore, it is well settled that the Commission may not arbitrarily disregard evidence submitted in support of a claim. *Freeman v. Con–Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001).

Here, the Commission found that the opinions of Dr. Ackerman, Dr. Cathey, and Dr. Carle were entitled to more weight than the opinions of Dr. Pace and Dr. Shahim. In doing so, the Commission impermissibly ignored relevant evidence in support of appellant's claim. The Commission wrote: "It is clear that Dr. Pace's recommendation of surgery, and Dr. Shahim's agreement, is based upon Dr. Pace's inaccurate assumption that the claimant's

calf muscle[s] were equal prior to claimant's injury in January of 2005. That is simply NOT the case. The claimant's left leg has been small[er] than his right leg most of his life." The record simply does not support a finding that Dr. Pace and Dr. Shahim based their opinions on the size of appellant's calf muscle as an indication of muscle wasting. While we make no finding regarding the weight that this evidence should be given, we note that the record contains evidence of several other factors that both doctors considered. Dr. Pace had before him appellant's "classic symptoms" of radiculopathy, positive straight leg tests, MRI, and the nerve conduction study. Dr. Shahim reviewed an MRI, a myelogram, and a post-myelogram CT. Additionally, Dr. Shahim's only comment regarding the calf muscle was that appellant "has some signs of muscle atrophy in the lower extremity involving the left calf muscle, although this is not significant."

Because this court does not review decisions of the Commission de novo on the record, *Roberts v. Whirlpool*, 102 Ark.App. 284, 284 S.W.3d 100 (2008), we are required to reverse the Commission's decision and remand for a full examination of the relevant evidence presented. *Id.*

Reversed and remanded.

HART, GLOVER, and HENRY, JJ., agree.

VAUGHT, C.J., and GLADWIN, J., dissent.

LARRY D. VAUGHT, Chief Judge, dissenting.

This is a classic case of dueling doctors, and under our standard of review, we must affirm. Therefore, I dissent. As pointed out in the majority opinion, the Commission "found that the opinions of Dr. Ackerman, Dr. Cathey, and Dr. Carle

were entitled to more weight than the opinions of Dr. Pace and Dr. Shahim." It is well established that what constitutes reasonably necessary medical treatment is a question of fact for the Commission. *Dalton v. Allen Eng'g Co.*, 66 Ark.App. 201, 989 S.W.2d 543 (1999). The Commission has the duty of weighing the medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Green Bay Packaging v. Bartlett*, 67 Ark.App. 332, 999 S.W.2d 695 (1999). We are obligated to affirm if there is substantial evidence to support the Commission's conclusions. *Id.* And, in this case, there is.

The majority cites *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001), for the proposition that the Commission may not arbitrarily disregard evidence submitted in support of a claim. That is certainly the law, but this case is just as certainly not an example of its application. In the twenty-two page Commission opinion, all five of the treating doctors' opinions were discussed—at length. The Commission did not disregard any evidence. As such, had the Commission relied on the opinions of Drs. Pace and Shahim and found the surgery compensable, I would have readily voted to affirm that decision. When there is evidence to support a decision of the Commission, and it has made credibility and weight decisions on questions of fact, we must affirm.

The majority focuses its entire analysis on a single statement contained in the Commission's opinion that they say is not supported in the evidence: "It is clear that Dr. Pace's recommendation of surgery, and Dr. Shahim's agreement, is based upon Dr. Pace's inaccurate assumption that the claimant's calf muscle[s] were equal prior to claimant's injury in January of 2005. That is simply NOT the case.

The claimant's left leg has been small[er] than his right leg most of his life." The majority holds that the record does not support this finding by the Commission. Whether it does or does not is immaterial to our decision. The question is whether the evidence supports the Commission's decision that the medical evidence—including the opinions of Drs. Ackerman, Cathey, and Carle—justifies the denial of benefits. That question must be answered in the affirmative.

In any event, an examination of Dr. Pace's deposition as abstracted by appellant includes his discussion of the "muscle wasting" on the claimant's left leg. Dr. Pace stated:

It surprised me he had muscle wasting when he came back to see me. His herniation on the MRI was termed moderate. I think that's fair. But his exam findings were not moderate. They were severe. I am speaking of the wasting in his leg. I have not seen any evidence of wasting when I last saw (sic) him in the spring of 2005.

. . .

Now, had he come in with muscle wasting at that time, I wouldn't have put him through conservative treatment. I would have recommended surgery, because he had a severe neurological deficit.

It therefore appears that at least some of Dr. Pace's reasoning for recommending surgery was based on the claimant's deficit in his left leg, whether called atrophy or muscle wasting. In any event, the decision of the Commission did not rise or fall on this one finding nor should our decision to reverse. I believe that the Commission's decision is well founded in the evidence, and I would affirm. I am authorized to state that Judge Gladwin joins this dissent.