2010 Ark. App. 565

**Gilberto VITE, Employee, Appellant**

v.

**Gilberto VITE, Employer, Firstcomp Insurance Co., and Death & Permanent Total Disability Trust Fund, Appellees.**

**No. CA 09–1375.**

Court of Appeals of Arkansas.

Sept. 1, 2010.

---

454

Jason M. Hatfield, Lundy, Lundy, Soileau & South, LLP, Fayetteville, AR, for appellant.

Randy Phillip Murphy, Mark David Wankum, Little Rock, AR, for appellant.

RITA W. GRUBER, Judge.

Appellant employee Gilberto Vite (Mr. Vite), a self-employed carpet layer for appellee employer Gilberto Vite, a sole-proprietorship, suffered a compensable back injury in November 2007 when he was struck by a large roll of carpet being unloaded from the back of a truck. He appeals the Arkansas Workers' Compensation Commission November 9, 2009 decision denying his claim for permanent disability and additional medical benefits. He contends 1) that the Commission incorrectly calculated his average weekly pay, and 2) that substantial evidence does not support the Commission's denial of permanent disability benefits and additional medical treatment. We affirm.

At a February 18, 2009 hearing, the administrative law judge accepted the parties' stipulations that Mr. Vite had reached maximum medical improvement and his healing period had ended on April 30, 2008, as reported by his treating physician; and that the treating physician, Dr. Rodney Routsong, had assigned a ten-percent anatomical rating to the body as a whole. Mr. Vite contended that as a result of his compensable injury he was permanently and totally disabled, based upon the ten-percent rating and a loss in wage-earning capacity; that he was entitled to additional medical treatment, including treatment from Dr. Routsong; and that wages should be calculated upon gross earnings without consideration of business deductions, resulting in the maximum compensation rate allowed by workers' compensation. Appel-lees contested these issues, controverted the ten-percent impairment rating, and requested credit for any benefits paid in excess of the correct compensation rate.[1]

The law judge found that Mr. Vite failed to prove entitlement to permanent disability benefits or to additional medical treatment from Dr. Routsong as being reasonable and necessary; that Mr. Vite's average weekly wage was $587.30; that compensation for total disability benefits and permanent partial disability benefits would be based upon this weekly wage; and that appellees were entitled to a credit for any benefits paid in excess of this rate. The Commission affirmed and adopted the law judge's decision.

Mr. Vite, fifty-four years old at the time of the hearing, worked in northwest Arkansas for the fourteen years preceding his injury and had lived in the United States for thirty years. His testimony was presented through a Spanish/English interpreter.[2] Other evidence included Mr. Vite's medical records; a functional capacity evaluation of Mr. Vite, performed on March 20, 2008; testimony by Tanya Owen, a rehabilitation expert, and the vocational evaluation she performed on November 4, 2008; an independent medical evaluation by Dr. Earl Peeples, an orthopedic surgeon, on October 16, 2008; and Mr. Vite's recent tax returns.

Mr. Vite testified that his middle back was injured on November 19, 2007, when he and another employee were handling a carpet roll that weighed at least 350 pounds. He said that he was carrying the roll on his shoulder; it began to fall; the other employee pushed it; and it hit Mr.

---

1. The law judge noted that appellee Death and Permanent Total Disability Trust Fund had deferred to the outcome of litigation. The Fund has filed no brief in the present case.

2. Mr. Vite's English-speaking son accompanied him to various medical appointments, as did an interpreter on occasions such as the functional capacity evaluation.

Vite's back, causing him to trip, fall, and lose consciousness. He said that the pain caused by this injury had rendered him unable to do any carpet laying since the accident. He described his symptoms on the hearing date as pain radiating into both legs and shoulders, pain and numbness in his knees, and his lower back hurting when he walked, making him unable to walk without limping or favoring one side. He testified that he occasionally went gambling and that after his injury had gone with his wife to a nearby city, where he stood and sat at slot machines. He said pain sometimes precluded him from driving, but he could fill out paperwork without pain, could handle items with his hands, and was "okay" with normal activities such as stretching his arms out. He said he was unaware that his functional capacity evaluation produced unreliable results or that Dr. Routsong noted he walked normally on June 5, 2008.

Tanya Owen testified that a wide-range achievement test and Raven Progressive Matrices she administered to Mr. Vite showed that he had no computer skills; was not literate in English; had a third-grade level in reading, kindergarten level in spelling, and fifth-grade level in arithmetic; and was poorly equipped for retraining. She said Mr. Vite would be unlikely to get and keep work because of his age; his lack of fluency in English, work skills outside construction, or computer skills; and his limited ability to learn computer skills. She testified that he would have to sit as needed; there were few sedentary, unskilled jobs to begin with; and there were no jobs in the area that he could do.

Ms. Owen stated that she reached her conclusion "irresponsive [sic] of the functional capacity exam" but that it was consistent with what Mr. Vite told her in his two-to-three-hour interview, including a discussion of his physical symptoms; his functional capacity exam, which limited him to sedentary work; and the opinion of Dr. Routsong, his treating physician and an osteopathic doctor, who limited his lifting to five pounds. Ms. Owen said she would assign greater weight to a treating physician's opinion than a one-time opinion by a different doctor, and she said she had not had access to the independent medical exam. She noted that the examiner administering the functional capacity evaluation exam concluded that Mr. Vite was capable of sedentary-level work after observing a lack of consistent effort and "numerous indicators of self-limiting effort." Reiterating that Dr. Routsong had restricted lifting to five pounds, she stated that sedentary-level work required lifting up to ten pounds and that carpet laying is classified as heavy-level work with a requirement of occasionally lifting a hundred pounds. Acknowledging the examiner's statement that Mr. Vite's "true functional limitations" were unknown due to his demonstrated inconsistencies, she said that, because the examiner was more qualified than she to make the statement, she would defer to him if that was his opinion.

Dr. Routsong's reports included his assessment of Mr. Vite for complaints of back pain on November 26, 2007, a week after he suffered his compensable injury. Dr. Routsong noted that x-ray reports demonstrated minimal anterior compression fractures from T12 through L3. He ordered thoracic and lumbar MRIs, which were performed on December 6, 2007. Among the impressions stated on the report of the lumbar MRI were mild desiccation of L4–5 and L3–4 disc spaces, with minimal disc bulging; no focal disc protrusion, extruded disc fragment, central canal stenosis, or neural exit foraminal stenosis; moderate degenerative facet arthropathy at all levels; and no pathologic marrow signal intensity arising from ver-

tebral bodies that would suggest healing trauma. Similarly, the thoracic MRI revealed no pathologic marrow signal intensity to suggest marrow infiltrative process or healing trauma, and it revealed normal alignment with no cord compression, enlargement, syrinx, or pathologic signal intensity suggesting neoplasm or myeloma. Dr. Routsong's treatment of Mr. Vite from December 2007 through April 2008 included prescriptions for medications and physical therapy. At a final office visit on June 5, 2008, Dr. Routsong referred Mr. Vite to a Dr. Tejeda for ongoing pain management of his spine, shoulders, elbows, and knees.

### Average Weekly Wage

■ Mr. Vite's first point on appeal presents an issue of first impression for this court regarding calculation of average weekly wage: whether any portion of business expenses should be deducted from a sole proprietor's gross income. In deciding this issue, the Commission followed the precedent it had established in *Hunt v. Lovett,* filed September 16, 1996 (E218307).

*Hunt v. Lovett* was the Commission's case of first impression addressing what portion of business expenses, if any, should be deducted from a sole proprietorship's gross income in calculating average weekly wage. It reads in pertinent part:

> Although the claimant insists that no expenses should be deducted, other states ... have held that a sole proprietorship's net earnings should be used as the basis for determining a claimant's wages because inclusion of unreimbursed business expenses does not accurately reflect a claimant's actual earnings during the period. *See, Oak Industries v. Industrial Commission of Arizona* [153 Ariz. 608], 739 P.2d 829 (Ariz.Ct.App.1987); *Happle Solar Con-*

*tractors v. Happle,* 547 So.2d 1035 (Fla. Ct.App.1989); *D & C Express, Inc. v. Sperry,* 450 N.W.2d 842 (Iowa 1990); *LaFleur v. Hartford Insurance Company,* 449 So.2d 725 (La.Ct.App.1984); *Baldwin v. Piedmont Woodyards, Inc.* [58 N.C.App. 602], 293 S.E.2d 814 (N.C.Ct.App.1982); *Nortrim [Nortim], Inc. v. Workmen's Compensation Appeal Board* [150 Pa.Cmwlth. 196], 615 A.2d 873 (Pa.Commw.Ct.1992); *Meredith Construction Company, Inc. v. Holcombe* [21 Va.App. 537], 466 S.E.2d 108 (Va.Ct.App.1996). Net earnings represents the difference between gross income and necessary business operating expenses. *Duvio v. Continental Casualty Co.,* 446 So.2d 436 (La.Ct.App. 1984); *Nortim, Inc., supra; Florida Timber Products v. Williams,* 459 So.2d 422 (Fla.Ct.App.1984).

> The business expense which has received the greatest degree of judicial attention is the expense associated with depreciation of equipment purchased and used by a sole proprietorship in carrying out its business purposes.... [T]he vast majority of jurisdictions addressing the issue now hold that depreciation expenses must be deducted from gross income to accurately calculate the actual income of a self-employed workers' compensation claimant.

*Hunt* at 5. On this basis the Commission reduced Mr. Hunt's gross earnings in an amount equal to business expenses paid, including depreciation, during the pertinent period.

In the present case, the Commission rejected Mr. Vite's contention that his average weekly wage should be based upon the gross receipts paid to him in his business without deduction of any business expenses. The Commission's calculations were these:

In this particular case, claimant filed Schedule C entitled Profit or Loss from Business for the tax year 2007. This schedule is contained in the documentary evidence. That schedule shows gross receipts of $292,734.00. That schedule also shows expenses and depreciation totaling $265,695.00 for a net profit of $27,039.00.

The Trust Fund has correctly determined that in 2007 the claimant worked for 46 weeks prior to his injury on November 19, 2007. Dividing claimant's net profit of $27,039.00 by 46 weeks results in an average weekly wage of $587.30. This would entitle claimant to a compensation rate of $392.00 for total disability benefits and $294.00 for permanent partial disability benefits.

Noting that Mr. Vite's temporary total disability benefits had been incorrectly paid based upon the maximum compensation rate, the Commission found that appellee was entitled to a credit for any benefits paid in excess of the correct rate.

Mr. Vite did not request that depreciation be included in computing his average weekly rate, and the parties agree that depreciation is not an issue. Mr. Vite argues instead that the Commission erred in deducting from his gross wages three business expenses: $16,560 for car and truck expenses, $8,202 for insurance, and $1,270 for legal and professional services. These deductions are shown on Form 1040 of his 2007 taxes at Schedule C, Profit or Loss From Business, one of the tax documents introduced into evidence at the hearing.

Mr. Vite argues that the goal of our workers' compensation law should be to replace |₈what the injured worker would have earned but for the injury. He asserts that after deducting for contract labor, he earned over $93,000; that he cannot sustain his standard of living or his

business on the temporary total disability rate of $392 calculated by the Commission; and that he is entitled instead to the maximum rate, $504. Appellee responds that both self-employed claimants and traditional employers incur various unreimbursed expenses that are needed to maintain their businesses. Appellee asserts that using net income rather than gross earnings is imminently reasonable for ascertaining a self-employed claimant's weekly wage because it provides a close estimate of average wage or take-home pay.

Mr. Vite argues in his reply brief that cases from other jurisdictions that appellee cites, while informative, are not authoritative. He notes that each state must follow its own workers' compensation law. *See, e.g., Olson v. Workforce Safety & Ins.,* 2008 ND 59, 747 N.W.2d 71 (calculating average weekly wage of a self-employed employer under the provision of N.D.C.C. § 65–01–02 (2003) that average weekly wage is based upon "net earnings").

Determining how to calculate a sole proprietor's weekly wages requires the statutory interpretation of workers' compensation statute Ark.Code Ann. § 11–9–518:

(a)(1) Compensation shall be computed on the average weekly wage earned by the employee under the contract of hire in force at the time of the accident and in no case shall be computed on less than a full-time workweek in the employment.

. . . .

(c) If, because of exceptional circumstances, the average weekly wage cannot be fairly and justly determined by the above formulas, the commission may determine the |₉average weekly wage by *a method that is just and fair to all parties concerned.*

Ark.Code Ann. § 11–9–518 (Repl.2002) (emphasis added). Act 796 of 1993 significantly changed our workers' compensation statutes and the way that compensation claims are to be resolved. *Sierra v. Griffin Gin,* 374 Ark. 320, 287 S.W.3d 556 (2008). Pursuant to the Act, workers' compensation statutes now must be strictly construed, allowing nothing to be taken as intended unless clearly expressed. Ark. Code Ann. § 11–9–704(c)(3) (Repl.2002); *Stewart v. Arkansas Glass Container,* 2010 Ark. 198, 366 S.W.3d 358.

Here, we hold that the Commission's decision to deduct the business expenses Mr. Vite claimed from his gross receipts, as set forth in his 2007 federal tax return, constituted a determination of average weekly wage that was "just and fair to all parties," as allowed by Ark.Code Ann. § 11–9–518(c). The Commission's interpretation of the statute was correct, and we affirm its decision to deduct all claimed business expenses from gross earnings in the present case.

### Permanent Disability and Additional Medical Treatment

■ Mr. Vite's remaining point on appeal is that substantial evidence does not support the Commission's denial of permanent disability benefits and additional medical treatment. He complains that the Commission erred in basing these issues on the opinion of Dr. Peeples, the independent medical examiner, rather than the opinions of both Dr. Routsong and Ms. Owen, the treating physician and the vocational expert who tested Mr. Vite. He argues that Dr. Peeples and the Commission disregarded the x-rays that Dr. Routsong referred to shortly after the injury, which documented a thoracic compression fracture, three lumbar compression fractures, and three lumbar disc bulges.

■ Permanent impairment is permanent functional or anatomical loss remaining after the healing period has ended. *Excelsior Hotel v. Squires,* 83 Ark. App. 26, 115 S.W.3d 823 (2003). Determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Ark.Code Ann. § 11–9–704(c)(1)(B) (year). "Objective findings" are defined as findings that cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16)(A)(i) (year). Complaints of pain may not be considered in determining physical or anatomical impairment. Ark. Code Ann. § 11–9–102(16)(A)(ii)(a). Neither straight-leg-raising tests nor range-of-motion tests shall be considered objective findings for the purpose of making physical or anatomical impairment ratings to the spine. Ark.Code Ann. § 11–9–102(16)(A)(ii)(b) (year).

■ Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires an employer to pay for medical treatment that is "reasonably necessary in connection with the injury received by the employee." The claimant bears the burden of proving entitlement to additional medical treatment. *Evans v. Bemis Co.,* 2010 Ark. App. 65, 374 S.W.3d 51.

The Commission's conclusion that Mr. Vite was not permanently totally or partially disabled, and that he had not suffered wage-loss disability, was based upon two findings: the ten-percent impairment rating assigned by Dr. Routsong was not supported by objective measurable physical findings, and the opinion of Dr. Peeples was entitled to greater weight than that of Dr. Routsong. Observing that Dr. Routsong's rating mentioned a diagnosis of "multilevel spinal somatic dysfunction," the Commission wrote:

The only objective tests performed on the claimant by Dr. Routsong were the

MRI scans of the thoracic and lumbar spine. Those scans were interpreted as revealing no signs of nerve or spinal cord compression. Nor are there any other objective findings establishing a permanent functional or anatomical loss.

■ Acknowledging that Dr. Routsong was the treating physician who evaluated Mr. Vite over a period of time and on multiple occasions while Dr. Peeples evaluated him on only one occasion, the Commission explained why it gave Dr. Routsong's opinion less weight that of Dr. Peeples:

> Dr. Peeples wrote a very detailed five-page report setting forth his findings and the basis for his opinion. More importantly, the findings made by Dr. Peeples regarding claimant's pain behavior during his examination are corroborated by the results of the functional capacities evaluation which claimant underwent on March 20, 2008. A review of the functional capacities evaluation report indicates that claimant gave an unreliable effort and did not put forth consistent effort.

Further, the Commission noted that the functional capacity evaluation report indicated that the results were unreliable and that Mr. Vite's true functional limitations "remain unknown due to the inconsistencies that he demonstrated." The Commission found that the functional capacities evaluation was corroborated by Dr. Peeples' observations during his examination of Mr. Vite, while Dr. Routsong simply noted that the functional capacities evaluation indicated Mr. Vite was "sedentary" and did not discuss or acknowledge that the evaluation was unreliable due to the inconsistencies.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence, which is evidence a reasonable person might accept as adequate to support a conclusion. *Evans, supra.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Allen v. International Paper Co.,* 89 Ark. App. 266, 202 S.W.3d 13 (2005).

■ The Commission may not arbitrarily disregard medical evidence or the testimony of any witness, but it is within the province of the Commission rather than this court to reconcile conflicting evidence, including the medical evidence. *Roberts v. Whirlpool,* 102 Ark. App. 284, 284 S.W.3d 100 (2008); *Stone v. Dollar Gen. Stores,* 91 Ark. App. 260, 209 S.W.3d 445 (2005). We are powerless to reverse the decision of the Commission when it chooses the testimony of one physician over that of another. *Ark. Wood Products v. Atchley,* 21 Ark. App. 138, 729 S.W.2d 428 (1987). The issue is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding, and we must affirm the decision if reasonable minds could reach the Commission's conclusion. *Goyne v. Crabtree Contracting Co.,* 2009 Ark. App. 200, 301 S.W.3d 16. Under these standards, we are compelled to affirm the present case.

Dr. Peeples concluded that there was no anatomic evidence of significant injury after he reviewed the medical records, his own physical examination of Mr. Vite, a lumbar radiograph performed the same day, and reports of the MRIs that Dr. Routsong had ordered as follow-up to the earlier x-ray report. Dr. Peeples stated

that his examination indicated profound psychological abnormality and unsupported pain behavior, and that treatment by Dr. Routsong had been unsuccessful. Because there was "no anatomic basis," Dr. Peeples disagreed with Dr. Routsong's rating. He wrote, "Of singular importance for objective documentation is the FCE exam which clearly documented manipulation of the test results as well as significant non-anatomic pain behavior." He noted he had told Mr. Vite and his son that there was no medical explanation for his complaints of pain, and that no medical explanation of "a blow to the lower [sic]" producing the total body pain that Mr. Vite had reported. Dr. Peeples placed no work restrictions on Mr. Vite and stated he should be released from all treatment, could resume any desired activity, and could return to work if he could "obtain the essentials of work (motivation, determination, effort)."

In denying Mr. Vite's claims for permanent disability benefits and additional medical treatment, the Commission chose the opinion of Dr. Peeples over that of other professionals. Quite simply, it was within the province of the Commission to do so. We hold that the Commission's opinion, with its assignment of greater weight to the opinion of Dr. Peeples, displays a substantial basis for the denial of these claims.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.