## Shirley McCOY *v.* BUCKEYE COTTON OIL

CA 80-396                                    609 S.W. 2d 670
Court of Appeals of Arkansas
Opinion delivered December 23, 1980
[Rehearing denied January 28, 1981.]

*Thomas & Nussbaum*, by: *Alan Nussbaum*, for appellant.

*Owens, McHaney & Calhoun*, by: *John C. Calhoun, Jr.*, for appellee.

ERNIE E. WRIGHT, Chief Judge. The appellant brings this appeal from a decision of the Workers' Compensation Commission denying her claim for medical and disability benefits on the finding she failed to establish by a preponderance of the evidence that her physical impairment arose out of and in the course of her employment.

For reversal appellant contends the Commission failed to give appellant the benefit of reasonable doubt in weighing the evidence. We treat the point as raising the issue that the finding of the Commission is not supported by substantial evidence and appellee argues this issue in its brief.

Appellant was injured in the right groin on November 29, 1978, when a jammed door to a lint cotton baler was pried open and the door handle struck her. Promptly after the accident her supervisor referred her to Dr. George Mallory, the company doctor, who examined the injury and found tenderness in the right groin. He performed no special tests, and released appellant for light work for a few days and prescribed pain medication. Dr. Mallory did not thereafter see or treat the claimant. On December 1, 1978, claimant was sent to the emergency room of Memorial Hospital in North Little Rock for further examination and her lower right side was found to be swollen. She worked until December 27, 1978, two days before she was to be laid off under a work reduction program. When she left work on December 27, she was having problems with hemorrhoids and her right leg was swelling.

Claimant continued to experience pain in the area of the injury and on January 25, 1978, she consulted Dr. Gilbert C. Evans. Upon examination, including x-rays and other tests, he found tenderness in claimant's right groin area and the existence of a hernia or a mass in that area. He referred her to Dr. John E. Allen, a cardiovascular specialist and surgeon. Dr. Allen's first impression was that the mass in appellant's groin was an incarcerated hernia. He performed surgery and found no hernia but found multifocal fibrosis and lymphadenitis in enlarged nodes. Based upon the claimant's history of injury at work and what he found upon surgery Dr. Allen stated the claimant's "*** problems were secondary to her employment and arose out of traumatic dermatopathic lymphadenitis. This was confirmed by the final path report of which I am enclosing a copy." Appellant was returned to the care of Dr. Evans and with the additional information supplied by the surgery performed by Dr. Allen, Dr. Evans' objective findings were, "Traumatic lumphgenitis — Hunter's Rt." His report reflected the claimant's history as

having been struck in the abdomen by a baler door in late November, 1978.

Neither Dr. Allen nor Dr. Evans were present to give detailed testimony at the hearing on the claim, however, the report of each reflected claimant's condition resulted from the traumatic injury she sustained at work. We believe it to be a matter of common knowledge of which the Commission can take notice that it is extremely difficult, if not almost impossible, for claimants to secure the presence of a physician at hearings on workers' compensation claims.

The employer's physician, Dr. Mallory, a general practitioner, was present and testified on behalf of appellee. He had not diagnosed appellant's dermatophyic lumphadenitis nor treated her for such condition. His diagnosis the only time he saw claimant was, "injury of right groin." He saw her only the one time and prescribed some pain pills. He performed no special tests nor were any performed under his supervision. In response to leading questions from the appellee's counsel he testified that vaginal infections could cause lymphadenitis, that the claimant could have incurred some infection after leaving her employment which had cleared up and left her condition, and that lymphadenitis is basically infectious in nature. He also testified infectious mononucleosis could cause lymphadenitis. At one point in response to a leading question as to whether hemorrhoids could produce lymphadenitis, he answered, "probably." Later in his testimony however he stated, "I don't think hemorrhoids would have anything to do with it." There is no evidence that appellant suffered from any of the infections that Dr. Mallory stated could cause lymphadenitis. The evidence was her health was good prior to the injury and she was doing heavy labor work. She did have hemorrhoids, but Dr. Mallory's final testimony as to whether that condition could account for lymphadenitis made it clear he did not think so. He stated he had never seen a case or read of a case of lymphadenitis resulting from a blow, and that he did not believe the condition Dr. Allen found came from the accident.

As the Commission's opinion does not detail specific findings of fact on some crucial points, we are unable to tell

whether the Commission resolved the claim upon the medical theory advanced by Dr. Mallory which in effect was that there is no validity to the opinions of Dr. Evans and Dr. Allen that the lymphadenitis was traumatic in origin and consistent with the history of the injury. The majority opinion of the Commission discusses at some length the testimony of the company doctor, but fails to mention the parts of the reports of Dr. Evans and Dr. Allen, a specialist, linking appellant's condition to the injury. Dr. Evans and Dr. Allen performed extensive tests, Dr. Allen performed surgery, and they diagnosed her condition. Dr. Mallory had no opportunity to examine the mass that developed in appellant's right groin. The opinion simply disposed of the crucial issue with the finding:

> Claimant failed to prove by a preponderance of the evidence that a condition known as "dermatopathic lymphadenitis" was caused by a condition arising out of and in the course of her employment.

The above "finding" is a conclusion rather than a finding of fact, and we conclude that this case must be reversed and remanded to the Commission for further consideration. It appears the Commission does not have sufficient information before it to make a definitive determination as to whether dermatopathic lymphadenitis can be produced by traumatic compression or rupture of lumph nodes or channels. Also, it is clear the Commission made no determination as to whether the multifocal fibrosis found in the groin by the pathologist was injury related.

The case will be reopened to receive further evidence on these crucial questions, and if necessary the Commission should employ a qualified medical examiner in the field in question for the purpose of securing additional medical testimony relative to the issue of whether the condition from which claimant suffered arose out of the injury. This course of action is authorized by Ark. Stat. Ann. § 81-1319 (i), § 81-1323 (b) and *Ward Furniture Mfg. Co.* v. *Reather*, 234 Ark. 151, 350 S.W. 2d 691 (1961).

It is clear the Commission has failed to adequately detail

findings of fact to enable this reviewing court to properly review the record. The Commission has the right to find the facts, but that right carries with it the duty to make and set out the crucial findings of fact and the supporting evidence. This rule is set out in Larson's Workmen's Compensation Law § 80.13 which cites numerous cases including *Ward Mfg. Co.* v. *Reather, supra*.

This case is reversed and remanded with directions to the Commission to take such further evidence as may be necessary, make definitive findings of fact on the crucial issues and render such award as is indicated by the findings.

In its final review of the evidence the Commission must keep in mind the established rule reiterated in *Wilson Lbr. Co.* v. *Hughes*, 245 Ark. 168, 431 S.W. 2d 487 (1968), that it is the duty of the Commission to draw every legitimate inference possible in favor of the claimant and to give him the benefit of the doubt in factual determinations.

Reversed and remanded.

PENIX, J., dissents.

MARIAN F. PENIX, Judge, dissenting. In this case, the majority of this Court, as presently constituted on its final day, has chosen to ignore the substantial evidence rule, supposedly the law in Workers' Compensation appeals.

This misguided effort to achieve social justice, at the expense of a "deep-pocketed" or target respondent or defendant, is not the duty of a court. We are supposed to apply the law. Only the legislature should change it.

The Workers' Compensation Commission draws every legitimate inference possible in favor of claimants. They are bound to do so by law.

When, as here, there obviously was substantial evidence for the Commission's ruling, it is folly, and destructive of our whole anglo-American system to law to persist in this practice.

For the last time, I respectfully dissent.