# ARKANSAS WOOD PRODUCTS/INDEPENDENT WOOD SUPPLIERS AND ROCKWOOD INSURANCE COMPANY, Insurance Carrier *v.* E.J. ATCHLEY

CA 86-480                                               729 S.W.2d 428

Court of Appeals of Arkansas
Division I
Opinion delivered May 27, 1987

*Hardin, Jesson & Dawson*, by: *Robert M. Honea*, for appellant.

*Wilson, Engstrom, Corum & Dudley*, by: *William R. Wilson, Jr.*, and *Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Robert L. Henry, III*, for appellee.

JAMES R. COOPER, Judge. ■ In this workers' compensation case, the only issue to be decided is whether there is substantial evidence to support the Commission's finding that the appellee was permanently and totally disabled. We find that there is sufficient evidence and affirm. The appellants also argue that the evidence was insufficient to support the Commission's finding that the appellee's injury was non-scheduled. We need not reach this issue in light of the fact that we affirm the Commission's finding that the appellee was totally and permanently disabled. An employee who suffers a scheduled injury, which proves to be permanently and totally disabling, is not restricted to compensation specified for the scheduled injury, but is entitled to the greater benefits provided for permanent and total disability. *Cooper Industrial Products, Inc.* v. *Worth*, 256 Ark. 394, 508 S.W.2d 59 (1974); *McNeely* v. *Clem Mill and Gin Co.*, 241 Ark. 498, 409 S.W.2d 502 (1966).

At the hearing before the administrative law judge, it was undisputed that the appellee's injury arose out of and in the course of his employment. The appellants paid medical expenses; temporary total disability from the date of injury, October 23, 1982 through February 25, 1985; and fifty weeks of permanent partial disability. The only issue before the administrative law judge was whether the injury was scheduled and the appellee was therefore not entitled to further permanent partial disability. The administrative law judge found that the appellee's injury was non-scheduled, and assessed a permanent partial disability rating of thirty-five percent to the body as a whole. Both sides appealed to the Commission, and the Commission affirmed the administrative law judge's opinion with the exception that the Commission

found the appellee to be permanently and totally disabled.

■■ In a workers' compensation case, the appellate court must view and interpret the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to the findings of the Workers' Compensation Commission and give the testimony its strongest probative force in favor of the action of the Commission. *Roberts* v. *Leo Levi Hospital*, 8 Ark. App. 184, 649 S.W.2d 402 (1983). Even if the evidence will support a finding contrary to that made by the Commission, the question before the appellate court is whether there is substantial evidence to support the finding made by the Commission. *Barksdale Lumber Co.* v. *McAnally*, 262 Ark. 379, 557 S.W.2d 868 (1977).

The appellee, while employed as a pulpwood worker, sustained an injury to his left shoulder. The biceps tendon, which attaches the biceps muscle to the bone, was torn. Surgery was performed on October 27, 1982, by Dr. Skagerberg. The shoulder joint was opened up to re-attach the muscle to the bone. After the surgery, the appellee was attended by Dr. Mumme. Dr. Mumme's progress notes, which were entered into evidence, show that the appellee suffered continual pain in the shoulder, in spite of therapy, medication, and a TENS unit. (A TENS unit is an electric stimulation device used to control and modify some types of pain.) Dr. Mumme felt, however, that the appellee's shoulder had improved, and on January 6, 1984, he noted that the appellee had recovered virtually full range of motion of the left shoulder. On February 28, 1984, Dr. Mumme rendered an opinion that the appellee had sustained a twenty-five percent permanent partial impairment to his left shoulder and fifteen percent to the body as a whole.

In the interim, an arthroscopy was performed on the appellee on August 17, 1983. In the operative report, Dr. Mumme noted that the procedure was difficult because of secondary adhesions in the left shoulder. He further noted that he was unable to satisfactorily examine the intra-articular aspect of the shoulder because of tightness and adhesions.

At the recommendation of the appellee's family physician, the appellee was seen by orthopedic specialist Dr. John Wilson. Dr. Wilson found mild restrictive motion in the shoulder, and gave the appellee a permanent impairment rating of fifteen

percent to the upper extremity and nine percent to the body as a whole.

In addition to Drs. Mumme and Wilson, the appellee was also being seen by Dr. Knight, who works with Dr. Mumme at the Holt-Krock Clinic in Fort Smith, Arkansas. Dr. Knight's findings and impairment ratings were essentially the same as Dr. Mumme's.

At the hearing, Dr. McBryde, the appellee's family physician, testified. He stated that he believed the appellee suffered impairment of fifty percent to the shoulder and twenty-five percent to the body as a whole. He testified that the appellee could not lift anything with his left arm, and could only lift fifty percent of normal with his right arm. Dr. McBryde also found an injury to the left elbow which restricted the appellee's ability to reach with his left arm. Although the doctor was unable to specify any particular incident in which the appellee injured his elbow, he did state that the appellee had not had any problems with the elbow prior to the shoulder injury. The doctor also stated that the appellee's problems with headaches were attributable to the shoulder. It was his opinion that instability of the neck and shoulder were causing a muscle contraction type headache. Dr. McBryde also found degenerative arthritic changes in the neck, and felt that the arthritis and shoulder injury tended to aggravate each other. The appellee had been suffering from high blood pressure prior to the shoulder injury. Seven days after the injury, the appellee's blood pressure rose even higher and he required increased medication to control it because his blood pressure has not returned to the pre-injury range. Dr. McBryde testified that part of the reason for the elevated blood pressure was the stress placed on the appellee because of the injury, the associated pain, and financial concerns. Dr. McBryde also discussed the appellee's prior back injury. At the time of that injury he had been treated by Dr. Wright, who had been the appellee's family physician prior to Dr. McBryde. As a result of all of the symptoms, Dr. McBryde testified that the appellee's physical abilities were limited.

The thrust of the appellants' argument is that the opinions of the orthopedic specialists, Drs. Mumme, Wilson and Knight, should be given greater consideration than that of the

family physician. However, that is a matter going to the weight and probative force of the evidence, rather than its substantiality. *Barksdale Lumber Co.* v. *McAnally*, 262 Ark. 379, 557 S.W.2d 868 (1977). Conflicts in medical testimony are for the Commission to resolve, and when the Commission chooses to accept the testimony of one physician over that of another, this Court is powerless to reverse the decision. *Barksdale, supra.*

■ Furthermore, many factors, not just the medical evidence, are to be considered in a determination of wage loss disability. Consideration should be given to the claimant's age, education, experience, and other matters affecting wage loss, including the degree of pain he endures as a result of the compensable injury. *Chism* v. *Jones*, 9 Ark. App. 268, 658 S.W.2d 417 (1983); *Hunter Wasson Pulpwood* v. *Banks*, 270 Ark. 404, 605 S.W.2d 753 (Ark. App. 1980).

The appellee testified that he was fifty years old and had not had any job training or education since his graduation from high school in 1954. His work history is limited to heavy manual labor and operating heavy equipment. He testified that he could not return to those jobs because of the pain, weakness, and limited motion in his arm and shoulder. He also stated that he could not sit or stand for long periods of time, could not drive for long periods of time, and that his wife had to assist him with dressing.

The appellee lived in Scott County all of his life with the exception of the six years he was in the Navy. The County Judge, Hon. Clyde Hawkins, testified that the appellee had worked for him before and he knew the appellee to be a hard worker. He also stated that he was familiar with the job market in Scott County and did not know of any job the appellee could perform.

■ We find that the medical evidence, along with the evidence of the appellee's job skills, education, and the fact that he still suffers severe pain, supports the Commission's finding that the appellee is permanently and totally disabled.

Affirmed.

CORBIN, C.J., and CRACRAFT, J., agree.