2009 Ark. App. 531

**Gladis HERNANDEZ, Appellant,**

v.

**WAL–MART ASSOCIATES, INC., Appellee.**

**No. CA 08–961.**

Court of Appeals of Arkansas.

July 1, 2009.

Sterling Law Firm, P.A., by: Brent Sterling, Fayetteville, for appellant.

The Bassett Law Firm, by: Dale W. Brown, Fayetteville, for appellee.

RITA GRUBER, Judge.

Gladis Hernandez appeals the denial of her workers' compensation claim for bene-

fits related to her compensable back injury, which she sustained while working for appellee Wal–Mart and scanning heavy boxes of books on August 11, 2005. The Workers' Compensation Commission found that the compensable injury resolved no later than November 1, 2005. The Commission further found that Hernandez had not proven 1) entitlement to temporary total disability benefits from February 8, 2006, to an undetermined date; or 2) that medical treatment by orthopedic surgeon Dr. Cyril Raben, including tests and surgical procedures, was reasonable and necessary. Hernandez asserts that the Commission arbitrarily disregarded Dr. Raben's testimony in finding that she sustained only a lumbar strain rather than a herniated disc as a result of her compensable injury, and therefore also erred in denying |₂additional medical benefits, temporary total disability benefits, and attorney's fees. She therefore contends that substantial evidence does not support the denial of additional medical benefits and temporary total disability. We disagree and affirm.

Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001). Where the denial of a claim is based upon the claimant's failure to meet her burden of proving entitlement to benefits, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000); *Williams v. Arkansas Oak Flooring Co.*, 267 Ark. 810, 590 S.W.2d 328 (Ark.App.1979). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark.App. 162, 258 S.W.3d 394 (2007).

It is within the Commission's province to reconcile conflicting evidence, including the medical evidence, and to determine the true facts. *Stone v. Dollar Gen. Stores*, 91 Ark.App. 260, 209 S.W.3d 445 (2005). Although it is within the province of the Commission to weigh conflicting medical evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Roberts v. Whirlpool*, 102 Ark.App. 284, 284 |₃S.W.3d 100 (2008). But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *See Ark. Wood Products v. Atchley*, 21 Ark.App. 138, 729 S.W.2d 428 (1987) (rejecting an argument that the opinions of three orthopedic specialists should be given greater consideration than that of the family physician, and explaining that the matter involved the weight and probative force of the evidence rather than its substantiality).

Hernandez relies upon Dr. Raben's opinion that her compensable injury caused her lumbar disc herniation and associated treatment. This differed from the opinion of Dr. Gary Moffitt, Wal–Mart's company doctor and a general practitioner. Dr. Moffitt stated that Hernandez's complaints of left-side pain after her compensable injury did not correlate with an MRI performed on September 1, 2005, which disclosed a herniated disc at the same level on the right side. Dr. Moffitt opined that the herniation was unrelated to her compensable injury, which he diagnosed as a muscular strain. On January 13, 2006, Dr. Moffitt saw Hernandez and reported that her symptoms and complaints of pain were "consistent with an L5–S1 radiculopathy

on the right. . . . She may continue to work without restrictions."

In making its findings, the Commission found that Dr. Raben's opinion was entitled to minimal weight. The Commission noted that Dr. Konstantin V. Berestnev saw Hernandez on August 15, 2005, and assessed a lumbar strain, as had Dr. Moffitt. It pointed to a report by Dr. Moffitt that the injury had largely resolved by November 1, 2005. The Commission noted that orthopedic surgeon Dr. Robert Tomlinson did not "opine that the L5–S1 disc protrusion was the result of an accidental injury," that neuro-surgeon Dr. Kelly Danks did not opine that the "degenerative bulging was the result of an acute injury," and that Dr. Danks did not causally connect his recommendation for epidural injections to Hernandez's compensable injury. The Commission observed, "None of the claimant's treating physicians, other than Dr. Raben, opined that the claimant had sustained a herniated disc as a result of her lumbar strain."

It was up to the Commission, as the finder of fact, to resolve conflicting medical opinions and evidence regarding the causation of Hernandez's disc herniation. The evidence, viewed in the light most favorable to the Commission's findings, is such that reasonable minds could have reached the conclusion of the Commission without resort to speculation or conjecture. *See White Consol. Indus. v. Galloway*, 74 Ark. App. 13, 45 S.W.3d 396 (2001). We hold that the Commission did not arbitrarily disregard Dr. Raben's opinion and that the Commission's decision, based upon Dr. Moffitt's opinion that Hernandez's injury did not result in her herniated disc, displays a substantial basis for the denial of relief. *See Williams, supra.*

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.

PITTMAN, J., concurs.

ROBBINS and BAKER, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, concurring.

I write separately not merely to refute the opinions of the dissenting judges, but also to state my disappointment and frustration with the majority's refusal to enunciate a clear standard to be used in determining whether evidence presented to the Commission has been "arbitrarily disregarded." The doctrine relating to arbitrary disregard of evidence began in Arkansas in the context of railroad cases, where juries engaged in speculation to find negligence in the face of uncontradicted eyewitness testimony by railroad employees describing the circumstances of the accident. The Arkansas Supreme Court held that juries were not permitted to grant verdicts for a plaintiff—the party with the burden of proof—in the face of uncontradicted eyewitness evidence to the contrary. *See generally Landis v. Hastings*, 276 Ark. 135, 633 S.W.2d 26 (1982).

That doctrine has been turned on its head in workers' compensation cases[1] as it

---

1. An excellent example of this phenomenon is found in Judge Robbins's dissent, where he says that "if the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the Commission's refusal to make an award." Thus, in Judge Robbins's view, the claimant's burden of proof is discharged by a presumption of compensability despite the General Assembly's dictate that, in determining whether a party has met the burden of proof on an issue, the Commission must weigh the evidence impartially, without giving the benefit of the doubt to any party. Ark.Code Ann. § 11–9–704(c)(4) (Repl.2002). Judge Robbins relies

**534**

is frequently argued by attorneys, and we have sometimes held, that the Commission has "arbitrarily disregarded" *contradicted* evidence, reversing and remanding with directions to enter judgment in favor of *the party with the burden of proof. See, e.g., Woodall v. Hunnicutt Construction,* 67 Ark.App. 196, 994 S.W.2d 490 (1999), *rev'd,* 340 Ark. 377, 12 S.W.3d 630 (2000).[2] This is clearly wrong. This confusion is in large part attributable to the failure to define arbitrary disregard of evidence, and failure to reconcile this doctrine with the unassailable fact that our review is limited by statute to determining whether there is substantial evidence to support the Commission's findings.[3]

What must be shown to demonstrate that the Commission has arbitrarily disregarded evidence? In the context of appellate review of administrative decisions in general, our supreme court has held that, in order for an administrative action to be invalid as arbitrary, the action must either lack any rational basis or hinge on a finding of fact based on an erroneous view of the law. *Pine Bluff for Safe Disposal v. Arkansas Pollution Control and Ecology Commission,* 354 Ark. 563, 127 S.W.3d 509 (2003); *Arkansas Professional Bail Bondsman Licensing Board v. Oudin,* 348 Ark. 48, 69 S.W.3d 855 (2002). An arbitrary act is thus an illegal or unreasoned act; an act is not arbitrary simply because the reviewing court would have acted differently. *Woodyard v. Arkansas Diversified Insurance Co.,* 268 Ark. 94, 594 S.W.2d 13 (1980). Proving that mere error has occurred is not sufficient to meet this test. *Id.; Bryant v. Arkansas Public Service Commission,* 55 Ark.App. 125, 931 S.W.2d 795 (1996).

The dissenting judges and, it appears, the majority, reject my assertion that the above-cited cases defining arbitrariness in administrative cases are applicable to our

---

on *Heptinstall v. Asplundh Tree Expert Co.,* 84 Ark.App. 215, 137 S.W.3d 421 (2003); *Wal-Mart Stores, Inc. v. Stotts,* 74 Ark.App. 428, 49 S.W.3d 667 (2001); and *Min-Ark Pallet Co. v. Lindsey,* 58 Ark.App. 309, 950 S.W.2d 468 (1997). However, those cases misstate the law by relying on a line of cases requiring that the Commission give the benefit of the doubt to the claimant when determining factual issues. As the learned Justice Dudley said in *Wade v. Mr. C. Cavenaugh's,* 298 Ark. 363, 768 S.W.2d 521 (1989), "[T]his is no longer the law. Act 10 of 1986, Second Extraordinary Session, codified as Ark.Code Ann. 11–9–704(c)(4) (1987) changed the existing law to provide that in determining whether a party has met its burden of proof, Administrative Law Judges and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party." 298 Ark. at 367, 768 S.W.2d at 522–23. That this doctrine continues to find its way into our opinions two decades after being pronounced defunct by the Arkansas Supreme Court is a measure of the degree of resistance to and deviation from the standard of review enunciated by the legislature and supreme court.

**2.** Judge Baker's continued insistence that I have given no examples of our misapplication of the doctrine of "arbitrary disregard" of evidence puzzles me. *See also* note 1 *supra* and note 4 *infra.* Most of the more egregious misapplications of the doctrine are found in unpublished opinions that I am precluded by Arkansas Supreme Court Rule 5–2 from citing. However, these cases exist, and interested researchers are invited to read them and draw their own conclusions.

**3.** In her dissent, Judge Baker states that my discussion of the law relating to the arbitrary disregard of evidence in workers' compensation cases has no place in the analysis of this case. However, appellant repeatedly asserts that the Commission arbitrarily disregarded the testimony of Dr. Raben in finding that appellant sustained only a lumbar strain rather than a herniated disc as a result of her compensable injury, and therefore erred in denying additional medical benefits, temporary-total-disability benefits, and attorney's fees. Plainly, a discussion of these issues is essential to a decision of the issues before us.

review of decisions of the Workers' Compensation Commission which, of course, is itself an administrative agency. This is regrettable; our refusal to expressly define what does and does not constitute arbitrary disregard of evidence leads to arguments, such as that made in the present case, that the Commission arbitrarily disregarded the medical opinion of one doctor because the opinion offered by a different doctor was entitled to much greater weight. This ₈argument is frequently made on appeal and is utterly contrary to our standard of review, yet, for some inexplicable reason, the majority has refused to directly confront it in this case. Our inability to agree on the proper standard of review to be applied in such cases leads to the absurd result that we frequently reverse the Commission on the grounds that it has arbitrarily disregarded evidence by employment of a standard that is so vague as to itself be arbitrary.

The answer to the argument raised by appellant in this case is that we are unconcerned with the weight of the opposing testimony. We ignore it in our review. *See Barksdale Lumber Co. v. McAnally,* 262 Ark. 379, 385, 389, 557 S.W.2d 868, 872, 874 (1977); *Arkansas Wood Products v. Atchley,* 21 Ark.App. 138, 141–42, 729 S.W.2d 428, 430 (1987). The findings of the Arkansas Workers' Compensation Commission have the force and effect of a jury verdict; thus, we cannot reverse the Commission's findings unless we could reverse a judgment based upon a jury verdict concerning the same question. *Barksdale Lumber Co. v. McAnally, supra.* In deciding whether there is substantial evidence to sustain the Commission's findings, we review only the sufficiency of the evidence, not the weight thereof: the reviewing court in workers' compensation cases considers *only* the evidence that is most favorable to the Commission's findings, *Clark v. Peabody Testing Service,* 265 Ark. 489, 579 S.W.2d 360 (1979), and we view and interpret that evidence, along with all reasonable inferences deducible therefrom, in the light most favorable to those findings. *Barksdale Lumber Co. v. McAnally, supra.* The preponderance of the evidence does not concern us. *Ozan Lumber Co. v. Garner,* 208 Ark. 645, 187 S.W.2d 181 (1945). ₉Weighing the evidence is within the sole province of the Commission, and questions of weight are beyond the scope of appellate review. *Maupin v. Pulaski County Sheriff's Office,* 90 Ark.App. 1, 203 S.W.3d 668 (2005).[4]

---

4. These rules have at times been ignored or grossly misapplied by the appellate court. One example is the case of *Bohannon v. Walmart Stores, Inc.,* 102 Ark.App. 37, 279 S.W.3d 502 (2008), which is cited by Judge Baker in her dissent. We held that expert testimony was not substantial, relying in part upon our conclusion that the physician's assumption that the exposure time was brief was not substantial because "appellant's coworkers testified that they left the work area thirty minutes after noticing the chemical odor." 102 Ark.App. at 43, 279 S.W.3d at 507. In that and other such cases, we have in effect determined the substantiality of evidence not by viewing the evidence in the light most favorable to the Commission's findings, but instead by taking into account whatever in the record fairly detracts from its weight.

But this standard was expressly rejected in *Scarbrough v. Cherokee Enterprises,* 306 Ark. 641, 816 S.W.2d 876 (1991). There, the Arkansas Supreme Court, squarely confronted with the issue, declined to adopt a standard redefining substantial evidence as based on an examination of the record as a whole—*i.e.* by comparing the Commission's findings to contrary evidence in the record—because it felt constrained by *stare decisis* and found no compelling reason to overrule fifty years of established precedent regarding the interpretation of "substantial evidence" with respect to appeals from the Commission. 306 Ark. at 644–45, 816 S.W.2d at 877–78. Although the supreme court has not seen fit to change the law in the eighteen years since the *Scarbrough* decision, we have frequently employed, *sub silentio,* the "substantial evidence on the rec-

The Arkansas Supreme Court has, since the inception of the workers' compensation law, maintained the same standard of review in reviewing the findings of the Commission: when a fact finding of the Commission is challenged on appeal, it will be affirmed if it is supported by substantial evidence. *See, e.g., Ozan Lumber Co. v. Garner, supra; Meyer v. Seismograph Service Corp.,* 209 Ark. 168, 189 S.W.2d 794 (1945); *Clark v. Peabody Testing Service, supra; Sierra v. Griffin Gin,* 374 Ark. 320, 287 S.W.3d 556 (2008). In *Scarbrough v. Cherokee Enterprises,* 306 Ark. 641, 816 S.W.2d 876 (1991), the supreme court expressly rejected the standard that the appellant in this case, and many others, asks us to employ. *See* note 4, *supra.* The reticence of the majority and the apparent denial by the dissenting judges of the existence of this controlling law has and will continue to invite disappointed claimants to argue on appeal that favorable evidence has been "arbitrarily disregarded" in the hope that we will rectify this injustice by arbitrarily ordering the Commission to award benefits.[5]

Because there is no agreement on this court regarding the proper standard of review in workers' compensation cases, our application of it differs widely from opinion to opinion. I hope that the supreme court will address the problem and issue specific guidelines appropriate to examining appeals for sufficiency in general and arbitrary disregard of evidence in particular that can be evenly applied.

I respectfully concur.

JOHN B. ROBBINS, Judge, dissenting.

It is not disputed that appellant suffered a lumbar strain during the subject incident on August 11, 2005, but the issue is whether that lifting incident at work also caused her herniated disc. Appellant's herniated disc became symptomatic within five weeks after the incident. By September 19, Dr. Moffitt reported that appellant had been having "intermittent numbness of her entire right leg but was not having much in the way of symptoms on her left side." His September 30, November 1, and January 13 reports all mention right-leg or foot numbness or pain.

The majority opinion states expressly what the Commission held by implication, *i.e.,* that it was Dr. Moffitt's opinion that appellant's herniated disc was not related to her injury she suffered at work. I have scoured the medical reports made by Dr. Moffitt and do not find such an opinion. The nearest Dr. Moffitt comes to actually giving an opinion on the lack of a causal connection between the August 11 incident and appellant's herniated disc is contained in his letter of October 21, 2005, where he states:

In regards to the injury reported on the 11th of August, it really appears to me

ord as a whole" standard rejected therein by finding that contrary evidence was arbitrarily disregarded. To ignore the established standard of review in order to apply, when we see fit, a different standard that has been expressly rejected by the supreme court is truly arbitrary.

In her dissent in the instant case, Judge Baker waxes eloquent about the need for each party and entity involved in workers' compensation appeals to dutifully perform their assigned function, and then states that she would reverse on the basis of an argument never made by the claimant, below or on appeal. We are, of course, prohibited from reversing on such grounds. *See Hill v. White-Rodgers,* 10 Ark.App. 402, 665 S.W.2d 292 (1984). To do so would be to ignore our role as impartial arbiter and assume the mantle of advocate.

5. Despite a diligent search, I have been unable to find a single workers' compensation case in which we have held that evidence favorable to an employer or insurer was arbitrarily disregarded.

that this is mostly an S1 strain on the left side. She does have evidence of a disc protrusion on the right, but it does not correlate with her symptoms and physical findings.

Whatever is meant by recognizing that appellant has evidence of a disc protrusion (which an MRI performed following the August 11 incident documented), and then saying it does not correlate with her symptoms and physical findings is unclear, especially in light of Dr. Moffitt's letters of September 19 and September 30 where he reported appellant's complaints of numbness in her right leg.

Two points should be noted with respect to Dr. Moffitt's October 21 letter: first, he does not rule out the possibility that appellant suffered injury beyond a lumbar strain because he states that it appears to him that this was "mostly" an S1 strain on the left. Secondly, Dr. Moffitt did not represent that what "appears" "mostly" to him was an opinion within a reasonable degree of medical certainty. Of course, the causal connection between employment and an injury does not ordinarily require expert medical testimony. However, the Commission did in fact rely on medical reports, and the only medical opinion that was given within a reasonable degree of medical certainty was given by Dr. Raben, who opined that appellant's herniated disc was indeed caused by the incident at work.

Our supreme court has said that, if a doctor renders an opinion that goes beyond possibilities and establishes that a work-related accident was the reasonable cause of the injury, this will establish a reasonable degree of medical certainty. *See Freeman v. Con–Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001). Fur-

thermore, if the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the Commission's refusal to make an award. *See Heptinstall v. Asplundh Tree Expert Co.*, 84 Ark.App. 215, 137 S.W.3d 421 (2003); *Wal–Mart Stores, Inc. v. Stotts*, 74 Ark.App. 428, 49 S.W.3d 667 (2001); *Min–Ark Pallet Co. v. Lindsey*, 58 Ark.App. 309, 950 S.W.2d 468 (1997).[1] I submit that there is no substantial evidence to sustain the Commission's finding that appellant's herniated disc was not caused by the August 11 incident. To decide otherwise effectively nullifies appellate review. I would reverse the Commission's decision.

BAKER, J., joins.

KAREN R. BAKER, Judge, dissenting.

The majority affirms this case reasoning that the analysis involves the competing opinions of two doctors. Characterizing the opinions as merely conflicting medical evidence, the majority further concludes that the resolution of the conflict was a question for the Commission leaving this court powerless to reverse the decision. While credibility is certainly the province of the Commission, it is the duty of this court to determine whether the Commission's decision is legally sound. In this case, the decision is not. The majority acknowledges that the basis of the Dr. Moffitt's opinion supporting the Commission's decision is appellant's subjective manifestations of pain: "Dr. Moffitt stated that Hernandez's complaints of left-side pain after her compensable injury did not

---

1. The concurring opinion takes issue with my reliance on the precedent of these cases, which have not been overruled. It hardly seems right that adherence to established precedent should be the object of criticism.

correlate with an MRI performed on September 1, 2005, which disclosed a herniated disc at the same level on the right side." Pain is a subjective symptom of an injury, a necessary component to the medical diagnostic process. The subjective nature of pain, however, requires this court to find that pain alone cannot support an award of benefits, but must be accompanied by objective findings of an injury. *See Singleton v. City of Pine Bluff,* 97 Ark.App. 59, 244 S.W.3d 709 (2006) (reversing and remanding when objective findings indisputably established injury and holding that Commission arbitrarily and improperly disregarded claimant's complaints of pain given the objective findings); *Swift–Eckrich, Inc. v. Brock,* 63 Ark.App. 118, 975 S.W.2d 857 (1998). Conversely, an injured employee's description of pain is not legally sufficient to deny an award of benefits when objective findings of injury are present. Because the Commission relied upon an opinion based upon legally deficient criteria, we not only have the power to reverse, we have a duty to do so.

The opinion of Dr. Moffitt, upon which the Commission relied in denying benefits, was based upon appellant's identification of pain on the left side of her body, which the doctor viewed as inconsistent with the herniation on the right that was clearly identified by the MRI. This opinion was given on September 1, 2005, the same day the MRI was conducted and shortly after the injury. As Dr. Moffitt's treatment of appellant continued, his notations of appellant's symptomology revealed a progression of pain. From September through January 19, 2006, these notations indicated appellant's complaints of increasing pain on the right. On January 19, he stated that appellant had "a herniated nucleus pulposus by MRI of L5–S1 on the right. Some of the symptoms and physical findings that she demonstrates today are consistent with this." Dr. Moffitt further opined that he was "not exactly sure" what "the next best step" would be, stating, "I am not sure that surgery would be an appropriate alternative at this time due to concerns with anxiety." Nothing in the record supports a conclusion that Dr. Moffitt was evaluating surgery as an appropriate treatment for a lumbar strain. He clearly stated that his concerns over the appropriateness of surgery stemmed from his patient's anxiety level, not a concern that the surgery was an inappropriate treatment for her injury.

Subsequently, a discogram and CT were obtained that showed appellant to have pain at the L5–S1 level, the same level as the herniated disc. She was sent for a psychiatric evaluation, and it was recommended that she continue with psychiatric treatment following her surgical procedure; however, it was also recommended that she could go ahead and proceed with surgery.

Both the ALJ and the Commission found that appellant had suffered a compensable injury to her low back. She experienced acute pain in her low back after lifting a 35–pound box, which caused her to seek treatment. On September 1 and 30, 2005, Dr. Moffitt observed muscle tightness and spasms. Based upon this information, the Commission found that appellant had suffered an accidental injury caused by a specific incident and identifiable by time and place of occurrence on August 11, 2005. The MRI, performed on September 1, 2005, corresponded with the first day that Dr. Moffitt observed the muscle spasm and showed the disc herniation at the same level of the spasm.

Therefore, there is no dispute that appellant suffered a compensable injury to her low back after lifting a box. There is no dispute that after the incident she suffered from lumbar strain evidenced by

muscles spasms and that an MRI revealed a protruding disc at the same level as the muscular strain. In rejecting appellant's evidence that the protruding disc was attributable to the lifting of the box, the Commission stated: "None of the claimant's treating physicians, other than Dr. Raben, opined that claimant had sustained a herniated disc as a result of her lumbar strain." Actually, no physician claims that the herniated disc was a result of the lumbar strain. Dr. Raben stated that the protrusion was causally related to the incident on August 11, 2005, not caused by the lumbar strain. His exact words were that "the acute and proximate cause of her symptomology is related to an on-the-job injury creating a lumbar disc herniation." Furthermore, he explained that there were many reasons why appellant's back pain could have also existed on her left side initially and that his review of the MRI scan conducted on September 1 would lead him to expect appellant to suffer from some right leg pain and also perhaps some left pain.

The responsibility to weigh carefully, judge cautiously, and evaluate thoroughly the testimony of witnesses as an integral part of the fact-finding process bears heavily on the shoulders of the Commission. One obligation in its role as factfinder is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact. *Bohannon v. Walmart Stores, Inc.*, 102 Ark.App. 37, 279 S.W.3d 502 (2008). It is this court's responsibility to examine the evidence upon which the Commission relied. Both our and the Commission's duty is to examine the factual basis for doctors' opinions. When the factual basis for the opinions is not legally sufficient to support a doctor's opinion, it is also legally insufficient to support the Commission's decision.

Each participant in the process of evaluating a claim for workers' compensation benefits must be diligent in performing the duties of each respective role. When deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of the evidence. Ark.Code Ann. § 11–9–704(c)(2) (Repl.2002); Ark.Code Ann. § 11–9–705(a)(3) (Repl.2002); *Excelsior Hotel v. Squires*, 83 Ark.App. 26, 34, 115 S.W.3d 823, 828 (2003) (reversing and remanding for the Commission to make additional findings of fact, emphasizing that it is the Commission's duty to make such findings with no deference to the ALJ's findings). The Commission reviews an ALJ's decision de novo, and it is the duty of the Commission to conduct its own fact-finding independent of that done by the ALJ. *Id.* The Commission does not review the ALJ's decision to determine whether there was substantial evidence to support the ALJ's findings; rather, the Commission makes its own findings in accordance with the preponderance of the evidence. *Id.*

The ALJ in this case noted Dr. Moffitt's belief that appellant's symptoms did not correlate with the herniated disc on the right and his statement that there were no objective medical findings of a problem with appellant's back; however, the ALJ did not thoroughly articulate in his decision the factual basis for Dr. Moffitt's initial opinion nor the progression of Dr. Moffitt's observation and treatment of appellant. Rather, the ALJ focused on Dr. Raben's medical opinion, which he found credible and entitled to great weight in awarding appellant benefits.

The fact that the ALJ did not thoroughly address the basis of Dr. Moffitt's opinion, rendered early in his diagnosis and

treatment of appellant, does not lessen the Commission's duty to do so. The Commission may not merely assume that the factual basis for the doctor's opinion mentioned by the ALJ was entitled to any weight. It has an independent duty to evaluate each medical opinion. This duty is integral to the proper adjudication of claims, and this court has a responsibility to ensure that the Commission fulfills that function.

It is this court's duty to hold the Commission accountable, recognizing the balancing of rights with responsibilities. The Workers' Compensation Commission has the right to find the facts, but that right carries with it the duty to make and set out the crucial findings of fact and the supporting evidence, and where the Commission fails to adequately detail findings of fact to enable the appellate court to properly review the record, the case will be remanded so that the Commission may then do so. *McCoy v. Buckeye Cotton Oil*, 271 Ark. 638, 609 S.W.2d 670 (1980); *see also Singleton v. City of Pine Bluff*, 102 Ark.App. 305, 285 S.W.3d 253 (2008) (reversing and remanding with instructions for Commission to follow this court's mandate to fulfill its duty of fact finding).

The Commission must not only adequately articulate its findings; its duty as fact-finder carries with it the corresponding obligation to properly evaluate the medical opinions to determine if the facts upon which a doctor's opinion is based are legally sufficient to support the opinion. In *Bohannon v. Walmart Stores, Inc.*, *supra*, this court reversed a denial of benefits holding that the expert physician opinion provided no basis for the Commission's conclusion that the claimant did not require additional medical treatment for inhalation of chemicals used to clean air conditioning units. The expert assumed claimant did not suffer from symptoms that would normally accompany chemical inhalation, but medical reports revealed she suffered from those symptoms, and the treating neurosurgeon recommended an MRI scan of claimant's brain which was never conducted because employer would not pay for it. This court explained:

The sole issue before this court is whether the Commission erred in determining that additional medical treatment, including but not limited to Dr. Rutherford's recommendations, was not necessary. We hold that the Commission erred.

First, the Commission relied heavily on Dr. Foster's expert opinion, and it is clear from the record that Dr. Foster's opinion was based on several erroneous assumptions. Specifically, Dr. Foster admitted that he was unaware of the dimensions of the room where appellant worked; did not know the number of vents in the room; did not know how much 2-butoxyethanol was put in the air conditioner unit; did not know how much of the chemical was blown into the room; and did not know how close appellant was sitting to a vent. Moreover, he was unaware of the length of her exposure. He assumed that appellant's exposure time to the chemical was only a few minutes. However, appellant's co-workers testified that they left the work area thirty minutes after noticing the chemical odor, but appellant did not accompany them at that time. Rather, she remained behind at her workstation. Therefore, contrary to Dr. Foster's assumption, appellant's exposure was greater than thirty minutes.

Dr. Foster also made it clear during his deposition that the key factor in his opinion that appellant's headaches and speech problems were not caused by 2-butoxyethanol was that appellant did not experience any eye, nose, and skin irri-

tation in conjunction with her headaches. Dr. Foster agreed that those findings were at the "heart" of his opinion. Contrary to Dr. Foster's opinion, the emergency-room reports revealed that immediately following her exposure, appellant experienced pain and blurry vision in her left eye, had redness in her nasal chambers, and appeared to have swelling in her lips and mouth.

*Bohannon,* 102 Ark.App. at 43–44, 279 S.W.3d at 506–07.

In *Bohannon,* the expert based his opinion upon erroneous assumptions. The expert's opinion was based upon factual errors that rendered the assumptions and speculation upon which the opinion was based legally insufficient to support the doctor's opinion. *See Bohannon, supra.* Similarly to the doctor's reliance on assumptions that could not legally support a denial of benefits in *Bohannon,* Dr. Moffitt's opinion relied on his patient's description of pain. Certainly it was appropriate in the early stages of his diagnostic process to rely on appellant's description of pain to help him determine the cause of appellant's symptoms. While Dr. Moffitt's reliance on his patient's experience of pain is essential to his diagnostic process, the Commission is legally precluded from basing an award solely on a complaint of pain. Pain is a subjective symptom of an injury, and the experience of pain is individual in nature:

> While one would think that normally a person who had been injured would immediately report such injury to his employer or fellow employees, this is certainly not a hard and fast rule. Rather, such action would seem to depend upon the individual nature of the person involved, some people being able to bear pain more than others, and, of course, a desire to continue employment

for the purpose of earning wages could be a factor bearing upon this behavior. *Price v. Servisoft Water Conditioning Co.,* 256 Ark. 702, 705–06, 510 S.W.2d 293, 295 (1974).

Descriptions of pain in the diagnostic stage of an injury are a critical aspect of the medical protocol. This court has recognized that the diagnostic process is just that, a process with various tests and evaluation techniques used to develop a medical opinion regarding the patient's condition. *See Amaya v. Newberry's 3N Mill,* 102 Ark.App. 119, 282 S.W.3d 269 (2008) (reversing Commission's determination that claimant's healing period had ended when physician who stated claimant had reached maximum medical improvement also stated claimant should receive injections for his back and workers' compensation should pay for the treatment); *Southeast Arkansas Farmers Ass'n v. Walton,* 267 Ark. 1118, 597 S.W.2d 603 (Ark.App. 1980) (upholding determination that healing period did not end when treating physician had indicated claimant could return to work but further treatment would be required). While pain is an integral part of the diagnostic process, pain alone is too subjective to support an award of benefits. *See Singleton, supra;* Ark.Code Ann. § 11–9–102; *see also Smith v. County Market/Southeast Foods,* 73 Ark.App. 333, 44 S.W.3d 737 (2001) (explaining the interplay of objective tests and pain in the diagnostic process in describing a discogram as an objective test, even though it takes into account a patient's subjective pain response, because radiographic images of the dye are not subject to a claimant's manipulation).

This court should not elevate a medical professional's legitimate utilization of a patient's identification of pain as a diagnostic technique into a legally sufficient basis for awarding or denying a workers' compensa-

tion claim. We cannot award benefits solely on the subjective descriptions of pain. *See Singleton, supra;* Ark.Code Ann. § 11–9–102. To deny a claim based upon a doctor's initial impression in the diagnostic phase that he believes the pain is inconsistent with the undisputed objective medical findings completely disregards not only our precedents, but our acceptance of the general unreliability of the subjective experience of pain. This court has consistently held that pain alone cannot support an award of benefits. Conversely, we should hold that an injured employee's description of pain is not legally sufficient to deny an award of benefits. The majority's characterization of the Commission's analysis as merely one of credibility ignores the Commission's duty to properly evaluate the factual basis of the medical opinions and this court's duty to evaluate the legal soundness of the decision.[1] Accordingly, I would reverse.

1. The concurrence's discussion of the arbitrary disregard of evidence in the context of a worker's compensation case echos a concurring opinion in *Pyle v. Woodfield, Inc.,* 2009 Ark. App. 251, 306 S.W.3d 455. Both seem to attempt an unspecified correction of this court's misapplication of the standard. The discussion has no place in the analysis of this case and, even if it did, it fails to set forth a correct statement of the law or this court's application of the law.