Cite as 2022 Ark. App. 166

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-418

| | |
|---|---|
| JOHN SCHULGEN | Opinion Delivered April 13, 2022 |
| APPELLANT | |
| | APPEAL FROM THE ARKANSAS |
| V. | WORKERS' COMPENSATION |
| | COMMISSION |
| LOWE'S HOME IMPROVEMENT | [NO. H006705] |
| CENTERS, LLC; AND SEDGWICK | |
| CLAIMS MANAGEMENT | |
| APPELLEES | AFFIRMED |

## MIKE MURPHY, Judge

Appellant John Schulgen appeals the Arkansas Workers' Compensation Commission's (Commission's) decision affirming and adopting the opinion of the administrative law judge (ALJ) finding that Schulgen was not entitled to additional medical care or temporary total-disability (TTD) benefits. On appeal, Schulgen argues that substantial evidence does not support the Commission's finding. We affirm.

On October 6, 2018, twenty-six-year-old Schulgen was loading bags of cement while employed at Lowe's when he suffered a compensable back injury. He testified that as he was finishing up the task, he felt his back "twist and pop." He reported the injury to his employer and was sent to MedExpress where he was seen by a nurse practitioner, Janis Bishop. Bishop diagnosed his condition as a sprain of his lumbar spine ligaments and muscle spasm. Nurse Practitioner Bishop instructed him to apply ice and provided him pain medication. On

October 9, Schulgen returned to MedExpress and was treated by nurse practitioner Sunny Bray. Bray also assessed Schulgen's condition as a sprain of his lumbar spine ligaments, placed him on restricted duty, and instructed him to return in one week. On October 16, Schulgen was seen by nurse practitioner Joseph Foley and was diagnosed with muscle fascia and lower back tendon strain. According to Foley's notes, Schulgen was referred to Orthopedics Arkansas Specialty Orthopaedics in Little Rock, but Schulgen never went.

Schulgen was seen by Dr. Thomas Cheyne at Mercy Clinic Sports Medicine in Fort Smith on November 1, where he ordered x-rays of Schulgen's pelvis and lumbar spine. Dr. Cheyne diagnosed him with an acute lumbar sprain with possible atypical sciatica and underlying mild degenerative disc narrowing at L5-S1. Dr. Cheyne placed him on restrictive duty for a few weeks and then released him back to full duty. Dr. Cheyne's clinic notes indicated his recommendation that Schulgen go to physical therapy over the next four weeks. According to the medical records introduced, One Call Physical Therapy emailed a representative at Sedgwick on November 26 to notify Sedgwick that Schulgen had missed the appointment that was scheduled for him. Another email was entered into evidence from One Call Physical Therapy dated December 6 notifying Sedgwick that the office had been trying to contact Schulgen to reschedule his appointment. Specifically, it stated,

> We have tried to reschedule the therapy evaluation that was missed but have received no response from the claimant. At this point we will close this file until we receive further notice. We have advised the provider to contact us if the claimant does make contact to reschedule, in the event that happens we will send you confirmation and reopen the file.

2

Fifteen months later, in February 2020, Schulgen sought treatment for back pain from Lance Clouse, a chiropractor. Schulgen received treatment from Dr. Clouse in the form of spinal manipulation and an injection. The medical records from the February appointment state, "The patient presents with pain in the lower lumbar spine . . . . The pain has been going since Oct of 2019." Dr. Clouse ordered a lumbar MRI scan that was performed July 2020. Based on the results of the MRI, Dr. Clouse referred Schulgen to Dr. Blankenship, a neurosurgeon. Schulgen has since been off work per Dr. Blankenship's referral and has been awaiting surgery. On August 10, 2020, Dr. Blankenship provided the following recommendation.

> First of all I have told him I think it is extremely unlikely he is going to get over a disc herniation of this size. After a lengthy discussion the gentleman has elected to have a more definitive operation which given the degree of bony decompression he is going to need and also given the degree of instability that he has, I think that is wise decision. I told him that it is very unlikely that he is going to very long without having an arthrodesis at this level given the fact that I am going to have to take off quite a bit of his facet joint and he already has significant instability.

In a letter dated October 12, 2020, Dr. Clouse stated, "It is my opinion, to a reasonable degree of medical certainty, that given the severity of the disc injury revealed in the lumbar MRI that the damage occurred during the initial work comp. injury of late 2018. In my opinion this is the source and cause of his problem."

Schulgen filed a claim seeking TTD benefits from August 10, 2020, until a date yet to be determined in addition to reasonably necessary medical treatment, including the surgery recommended by Dr. Blankenship. Lowe's and Sedgwick contended that Schulgen had received all the benefits to which he was entitled for the compensable injury; he received

compensation benefits through December 6, 2018 (the day One Call Physical Therapy emailed Sedgwick that it was closing Schulgen's file). At the prehearing conference, the parties agreed to litigate whether Schulgen was entitled to TTD from August 10, 2020, through a date yet to be determined and whether he was entitled to additional medical treatment, including the surgery.

On January 11, 2021, the ALJ conducted a hearing that consisted of Schulgen's testimony, his medical records, and a letter opinion submitted on behalf of appellees from Dr. Owen Kelly, who had reviewed Schulgen's file. This letter stated in part,

> Mr. Schulgen had an injury in October of 2018, continued to work, and then presented well over a year later for treatment and eventual MRI evaluation. It would be difficult to connect the one-time isolated injury to his current condition.
>
> The natural history/resolution of disc herniations occurs between 6 months to one year. It is also shown that larger disc herniations resolve faster than smaller ones, and Mr. Schulgen has a large disc herniation. For Mr. Schulgen to work and not seek medical care for a symptomatic disc herniation for well over a year, does not fit his clinical picture. There were likely a multitude of factors that could have occurred over that time frame - additional lifting injuries, falls, and variable degrees of trauma. It would be hard to definitively ascertain what the cause of his disc herniation is since the MRI is some 1 1/2 years after his initial work injury at Lowe's. The likelihood/probability of the MRI findings being related to the initial injury are extremely low.

Schulgen testified that no one ever contacted him or sent him correspondence about going to physical therapy. He stated that if he had been aware of the appointment for physical therapy in 2018, he would have gone. He testified that he left his job at Lowe's in November 2018 for a better paying job as a lab tech. He testified that from the time he got injured in 2018 to when he saw Dr. Clouse in 2020, he never felt like he completely recovered. He

stated that from the time he left Lowe's in 2018 through 2019, he did not seek medical treatment "because of insurance," but he stated that he never asked Lowe's or Sedgwick to authorize additional treatment.

On cross-examination, appellees questioned Schulgen about Dr. Cheyne's notes recommending that Schulgen go to physical therapy for the next four weeks. Schulgen testified he never heard Dr. Cheyne talk about physical therapy. Schulgen testified that he thought the pain would go away on its own and that he filed a claim once he found out it would not get better.

The ALJ found that Schulgen had failed to meet his burden of entitlement to additional medical treatment or TTD benefits for his compensable injury. To support this finding the ALJ stated that Schulgen did not attend the referral to Orthopedics Arkansas and that he did not seek any additional medical treatment for low back complaints until he saw Dr. Clouse more than fifteen months after he had last seen Dr. Cheyne. The ALJ noted that a review of Dr. Clouse's medical records indicates that Schulgen's pain began in October 2019; however, the compensable injury was in October 2018. The opinion further stated that Dr. Clouse's medical notes do not make any mention of an injury at Lowe's or how his back pain began. The opinion also referenced Dr. Kelly's letter that stated the "probability of the MRI findings being related to [Schulgen's] initial injury were extremely low." In conclusion, the opinion stated,

> As previously noted, Dr. Clouse's initial medical reports indicate that claimant's problems began in October 2019, not 2018, and they make no mention of an injury with respondent.

It is also important to note that claimant admitted that he never asked respondent to authorize any additional medical treatment. In fact, even after claimant did begin seeing Dr. Clouse for low back complaints in February 2020, claimant admitted that he did not file a claim for additional workers' compensation benefits until it was determined that he would need surgery. Based upon this evidence, I simply find that claimant has failed to meet his burden of proving by a preponderance of the evidence that his back complaints and need for surgery as recommended by Dr. Blankenship is causally related to his original compensable injury of October 6, 2018.

Schulgen appealed to the Commission, which affirmed and adopted the ALJ's opinion. Arkansas law permits the Commission to adopt the ALJ's opinion. *White v. Butterball, LLC*, 2018 Ark. App. 7, at 4, 538 S.W.3d 240, 242. When the Commission adopts the ALJ's opinion, it makes the ALJ's findings and conclusions its findings and conclusions, and for the purpose of appellate review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Palmer v. Midwest Fertilizer, Inc.*, 2017 Ark. App. 236, at 6, 519 S.W.3d 732, 736. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm *Id.*

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in

connection with the injury received by the employee." A claimant is not required to furnish objective medical evidence of his continued need for medical treatment. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id.* The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id.* Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Carrick v. Baptist Health*, 2022 Ark. App. 134, at 12, ___ S.W.3d ___, ___. With this standard in mind, we must affirm.

We recognize that from the beginning Schulgen's medical records consistently reflect that he was suffering from low back pain. Significantly, in the x-rays, which Schulgen underwent at the direction of Dr. Cheyne, it was found that there was some disc narrowing at L5-S1. Schulgen's MRI detected a massive disc herniation at the same level. Additionally, as noted by the Commission's dissent, Dr. Kelly's record review and his conclusions about Schulgen's working fifteen months with this type of injury did not take into account the testimony that Schulgen had changed jobs to one that was significantly less taxing. However, we must defer to the Commission's credibility determinations and its experience and expertise in translating the testimony of medical experts. Schulgen's testimony contradicted his medical records. The Commission placed a greater weight on Schulgen's medical records

7

and his lack of follow-up care for over fifteen months while he continued to work without any restrictions as the basis for its determination of denial of additional benefits.

Schulgen argues that the Commission's opinion merely mentions several pieces of evidence but does not explain how it justified a denial of workers'-compensation benefits. However, the Commission's conclusions are supported by the following findings: Schulgen did not seek medical treatment at Orthopedics Arkansas despite knowledge of the referral; Schulgen worked forty hours a week at full duty from November 2018 through 2019 without seeking any additional medical treatment for his low back; Dr. Clouse's medical reports indicate Schulgen's pain began October 2019, and he did not make any mention of an injury at Lowe's or how his back pain began until a letter was introduced into evidence mentioning for the first time that he injured his back in late 2018 and that it was from a work-related injury; and Dr. Kelly opined that for Schulgen to have worked and not sought medical care for a symptomatic disc herniation for well over a year did not fit his clinical picture. These findings are matters within the province of the Commission rather than this court. *Id.*

To entertain Schulgen's argument that the Commission's decision implies that the injury was not serious because Schulgen was not diligent with his appointments would require us to reweigh the evidence. He contends that there is no indication in the record that insurance, Dr. Cheyne's office, or One Call Physical Therapy made any attempt to directly contact him. He argues that appellees should have introduced evidence that refuted his testimony that he was not made aware of the appointment. Citing *Barnes v. Greenhead Farming*, 101 Ark. App. 129, 270 S.W.3d 873 (2008), Schulgen claims that the lack of

introduction of such evidence suggests that it does not exist. In *Barnes*, we held that if one party should be in possession of evidence that would refute testimony or documents offered by the other party, then it may be presumed that if such evidence exists it would be contrary to the interests of the first party. However, *Barnes* is distinguishable because there, the claimant's testimony was uncontroverted and corroborated by another witness; here, the Commission cites controverted evidence to reach its finding.

Schulgen also cites *Stone v. Dollar General Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005), and *Sally v. Service Master*, 2009 Ark. App. 209, 301 S.W.3d 7, to support his argument that the Commission may not arbitrarily disregard the testimony of any witness. However, the facts in those cases are distinguishable because, in both cases, the Commission's credibility determination contradicted the ALJ's credibility findings. Here, both the ALJ and the Commission reached the same credibility determination. The conclusion was supported by the findings explained above, and the ALJ noted the discrepancies between Schulgen's testimony and the medical records evidencing that Schulgen's testimony was not arbitrarily disregarded.

Ultimately, the Commission placed a greater weight on Schulgen's medical records and Dr. Kelly's medical-records report. Further, while the Commission acknowledged the existence of a subsequent letter from Dr. Clouse relating the herniated disc to the 2018 compensable injury, the Commission placed more weight on Dr. Clouse's contemporaneous medical records that related the injury to 2019 and failed to relate the injury to any prior workers'-compensation claim. As stated above, the Commission has the authority to accept

or reject a medical opinion and to determine its probative value. Again, the issue is not whether we might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. Thus, in light of our standard of review, we affirm.

Because we affirm the Commission's decision denying Schulgen additional medical treatment, we affirm the Commission's decision denying him TTD benefits.

Affirmed.

ABRAMSON, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. Once again, I write separately to explain that, while I reluctantly agree that we must affirm the order in this case, I disagree with the decision of the ALJ and the Commission. *See Watson v. Highland Pellets, LLC*, 2022 Ark. App. 132, ___ S.W.3d ___.

Both the Commission's decision and our opinion today hinge on a "credibility determination" and the fiction that the Commission is in the best position to judge credibility, despite the fact that the Commission does not hear any testimony from witnesses. As in *Watson*, but even more so in this case, we have a claimant who never complained of, or was ever treated for, any kind of back pain or injury; indeed, prior to the accident, Schulgen was a perfectly healthy young man in his twenties. After the injury and over the course of two years, his symptoms progressed such that surgery was deemed necessary by Schulgen's doctors to alleviate the worsening condition of his spine. Schulgen's medical

records are characterized more by what is not in them than by what they include. The Commission relied heavily on Dr. Clouse's failure to refer to Schulgen's compensable October 2018 injury, though Dr. Clouse later connects the injury to Schulgen's current condition. The coup de grâce—Dr. Kelly's opinion that, after reviewing Schulgen's records, it was unlikely he could have worked with the injury described in them—is characterized by omission rather than inclusion of medical evidence. Our common sense and experience tell us that people work through incredible pain all the time, but lest I weigh the evidence, I agree that here, just as in *Watson*, we are hamstrung by the idea that the Commission is in the best position to weigh all the medical evidence, to determine what is most credible, and to determine its medical soundness and probative force. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. The Commission chose to weigh Dr. Clouse's initial assessment that was silent as to the source of Schulgen's symptoms and Dr. Kelly's vaguely surmised assessment that Schulgen's ability to endure pain through his work "does not fit the clinical picture" more heavily, and when the Commission chooses to accept the testimony of one physician over that of another, the appellate courts are powerless to reverse the decision. *Hernandez v. Wal-Mart Assocs., Inc.*, 2009 Ark. App. 531, at 3, 337 S.W.3d 531, 532 (citing *Ark. Wood Prods. v. Atchley*, 21 Ark. App. 138, 729 S.W.2d 428 (1987)).

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Allison T. Scott*, for appellees.